## L. D. FERGUSON v. DR. L. N. GLENN.

### (Filed 15 June, 1931.)

1. **Evidence N b—Sufficiency of evidence to be submitted to the jury.**

    Where there is any evidence tending to sustain the plaintiff's cause of action, even though conflicting in material parts, it should be submitted to the jury, but where there is no such evidence the defendant's exceptions to the refusal of the trial court to grant his motion of nonsuit or his request for a directed verdict will be sustained on appeal.

2. **Physicians and Surgeons C b—Evidence held insufficient to show neglect or unskillful treatment on part of physician.**

    Where a duly licensed physician and surgeon is sued for damages arising from alleged unskillful treatment of the plaintiff's broken leg, and all the evidence tends to show that the physician possessed the skill and

used the treatment which was usual for injuries like the plaintiff's, and which was used in like circumstances by physicians and surgeons of standing in their profession, without evidence to the contrary, the defendant's motion as of nonsuit thereon or his prayer for instructions to like effect, aptly tendered, should have been allowed.

3. **Same—Burden of proving physician's lack of skill and character required of him by law is upon person alleging such insufficiency.**

The standard of duty which a physician owes his patient is prescribed by law and arises out of the relationship, which is voluntary and contractual, and the law requires that a physician shall have such knowledge and skill as are ordinarily possessed by those similarly situated, and that he use his best skill in the treatment of a patient, but the physician is not an insurer of his patient's recovery, and the burden of proving that a physician licensed by the State Board of Examiners lacks the skill and character required of him by the law is upon the person alleging to the contrary.

APPEAL by defendant from *Harding, J.,* at January Term, 1931, of GASTON. Reversed.

This is an action to recover damages resulting from injuries caused by the negligent and unskillful treatment of plaintiff's broken leg by the defendant, a physician and surgeon. In his answer, the defendant denied all the allegations of the complaint which are essential to the cause of action on which plaintiff seeks to recover.

The issues submitted to the jury were answered as follows:

"1. Was the plaintiff injured by the negligence and unskillful treatment of his leg by the defendant, as alleged in the complaint? Answer: Yes.

2. What damages, if any, is the plaintiff entitled to recover from the defendant? Answer: $5,000."

From judgment that plaintiff recover of the defendant the sum of $5,000, together with the costs of the action, defendant appealed to the Supreme Court.

*J. D. McCall and J. L. Hamme for plaintiff.*
*J. Laurence Jones and John G. Carpenter for defendant.*

CONNOR, J. On his appeal to this Court the defendant contends that there was error in the trial of this action in that the trial court declined (1) to allow his motion for judgment as of nonsuit (C. S., 567), and (2) to instruct the jury as requested by him in writing and in apt time (C. S., 566), that if they believed all the evidence taken in the light most favorable to the plaintiff, they should answer the first issue, "No." The question presented for decision by these contentions is whether there was any evidence at the trial tending to sustain the allegations of the complaint. It is well settled that if there was no such evidence, the contentions must be sustained; but if there was any evidence tending to

show that defendant is liable in law to plaintiff for damages caused by his negligent failure to perform his duty, by reason of his relation to plaintiff as his physician and surgeon, then the contentions must be overruled. In the ·latter event, the evidence, although conflicting in material respects, was properly submitted to the jury.

On 3 August, 1927, the plaintiff, while crossing a State highway in Gaston County, North Carolina, was struck, knocked down and run over by a passing automobile. As a result of the accident, which it' is not contended by plaintiff was caused by the negligence of the driver of the automobile, plaintiff's left leg was broken in two places, one just below the knee, and the other just above the ankle. He was taken at once by the driver of the automobile to the Gastonia Hospital, and there placed under the care of the defendant, who is a practicing physician and surgeon, for the treatment of his injuries. The defendant undertook the treatment of plaintiff's injuries.

In his complaint plaintiff alleged that in the treatment of his injuries defendant negligently failed to exercise .that degree of knowledge and skill ordinarily possessed by members of his profession, (1) in that he negligently failed to reset the broken bones of his leg in a proper manner; (2) in that he negligently failed to take or have taken an X-ray picture of the broken bones in plaintiff's leg, in order to ascertain the exact condition of the bones, as he was requested by plaintiff to do; and (3) in that after he discovered, when the plaster cast was taken from plaintiff's leg, that the bones had not reunited, he negligently failed to operate on plaintiff's leg. He alleged that as the result of defendant's negligent and unskillful treatment of his leg, he has suffered permanent injuries to his great damage. These allegations are sufficient to constitute a cause of action on which plaintiff is entitled to recover of the defendant such damages as the jury shall assess. The burden was on the plaintiff, of course, to offer evidence sufficient to sustain the allegations.

The testimony of plaintiff as a witness in his own behalf was to the effect that he was unconscious when he was taken to the hospital by the driver of the automobile, and placed under the care and treatment of the defendant; that defendant caused a plaster cast to be put about plaintiff's broken leg, and that his leg remained in this plaster cast until some time in December, 1927; that when the plaster cast was taken from the leg, it was discovered that the bones had reunited at the break just below the knee, but had failed to reunite at the break just above the ankle; that he then requested defendant to take or cause to be taken an X-ray picture of his broken leg, but was advised by defendant that this was not necessary. After the plaster cast was taken from plaintiff's leg, the defendant put the leg in a wire brace, and wrapped it with adhesive strips.

Plaintiff was discharged from the hospital after about thirty days, and went to his home. At the request of the defendant, he returned to the hospital from time to time, for treatment by the defendant. He testified that while he was at his home he discovered that the broken bones at the break just above the ankle were pressing upon the skin of his leg. After making this discovery he went to the hospital and consulted the defendant, who advised him, after an examination of his leg, that the bones had not knitted together. This was early in December, 1927. He then requested the defendant to operate on his leg if defendant thought that an operation would be helpful. The defendant said: "We will wait sixty days, and if it does not join in that time we will go in and see what is the matter." Plaintiff did not return to the hospital after this visit, and did not again call upon defendant for treatment of his leg. Subsequently, he consulted Dr. McAdams. In consequence of his conversation with Dr. McAdams, plaintiff procured Dr. Miller to perform an operation on his leg. Before undertaking the operation, Dr. Miller had an X-ray picture made of plaintiff's leg. The operation was performed on 16 January, 1928. Since the operation the bones in plaintiff's leg have reunited, but the leg is weak, and plaintiff now walks with a decided limp. He continues to suffer pain because of the injuries to his leg.

Dr. McAdams, a practicing physician in this State, testified as a witness for the plaintiff. It was admitted by the defendant that the witness is an expert. He examined plaintiff's leg, at his request, some time in December, 1927, and found that it had been broken. The bones had not reunited. He said: "I noticed nothing unusual about the appearance of the bones other than that they had not reunited. They looked to be in good alignment." There was no evidence that an X-ray picture had been made of plaintiff's leg prior to the examination by Dr. McAdams, or that Dr. McAdams' testimony was based on such picture.

Dr. O. L. Miller, a practicing surgeon, testified as a witness for the defendant. He first saw the plaintiff some time in January, 1928, and operated on his leg on 16 January, 1928. He testified that he found that the lower fracture, for some cause which he did not discover, had not united. About six months after the operation the ends of the broken bones had begun to reunite. The X-ray pictures of plaintiff's leg showed that there had been an interference with the natural blood supply at the site of the injury. This may have been caused by infection at the time of the injury. There was nothing to indicate that there was any internal infection.

With respect to the X-ray picture the witness said: "I ordinarily take an X-ray picture in a fracture of this kind. The taking of an X-ray picture would depend upon the circumstances. It may be more impor-

tant to the patient not to disturb him, than to take the picture. When I saw the plaintiff, and had the X-ray picture made, he was in better condition than he was under the treatment of the defendant. Ordinarily, the taking of the picture would not hurt the patient, but it might hurt him to take him upstairs to have the picture made."

With respect to the time after the injury within which an operation such as. the witness performed on plaintiff's leg, should be performed, the witness said: "If the injury occurred on 3 August, 1927, and the bones had not reunited at the end of thirty-nine days, because infection had prevented the formation of callous, I would not consider it usually safe to operate under six months because of the danger of relighting the infection. I would not have considered it safe to have operated on plaintiff's leg, at the end of thirty-nine days, even if I had discovered at the end of this period that there was no infection."

Dr. L. N. Glenn, the defendant, testified as a witness in his own behalf. He described the condition of plaintiff's leg when he was brought to the hospital, and testified in detail as to his treatment of plaintiff's injuries up to the time the plaintiff ceased to visit him for treatment. He said: "In the treatment of Mr. Ferguson I gave him my best judgment. My first impression was that the leg should be amputated, but I decided after debating the matter in my own mind that I would save his leg if I could. That is what I did. His leg is much better than I ever thought it could be. I advised him to go to Dr. Miller. The last day I saw Mr. Ferguson I saw that there was a non-union. This was some time in December, 1927."

Dr. Miller was recalled and testified that he had heard Dr. Glenn testify as to the method and manner in which he treated plaintiff's injuries. In answer to a hypothetical question, to which there was no objection, he said that the treatment which Dr. Glenn testified that he gave to plaintiff was the recognized treatment of injuries such as the plaintiff had sustained. He said that when he first examined the broken bones in plaintiff's leg, he found that there was a low grade union at the corner of the tibia. The bones were not united. They had not united and were still separated because there was no callous. If sufficient callous had been thrown out, they would have united. The witness said: "In my opinion callous was not thrown out because of infection. From the history given me by the plaintiff, and from the appearance of the bones, I am of the opinion that there was infection at the time of the injury. When I operated on plaintiff's leg I had a clean field to work on and no infection."

After a careful consideration of all the evidence offered at the trial, as set out in the case on appeal, we are of opinion that it fails to show a breach of any duty which the defendant, as a physician and surgeon, owed to the plaintiff as his patient, or any injury resulting from de-

fendant's treatment of plaintiff's broken leg. There is no evidence tending to show that defendant did not possess the requisite degree of learning, skill and ability necessary to the practice of his profession and which others similarly situated ordinarily possess; there was affirmative evidence to the contrary. There is no evidence that defendant failed to exercise reasonable and ordinary care and diligence in the use of his skill and in the application of his knowledge in the treatment of plaintiff's injuries; there was affirmative evidence to the contrary. There is no evidence that defendant failed to exert his best judgment in said treatment, or in the care of plaintiff's leg so long as the relation of physician and surgeon and patient continued between defendant and plaintiff; there is affirmative evidence to the contrary. In the absence of such evidence, it was error to decline to allow defendant's motion for judgment as of nonsuit, or to give his prayer for instruction as to the answer to the first issue. *Nash v. Royster,* 189 N. C., 408, 127 S. E., 356. The cited case is authoritative and may be regarded as the leading case in this jurisdiction with respect to the duty which a physician and surgeon ordinarily owes to his patient. See *Smith v. Wharton,* 199 N. C., 246, 154 S. E., 12; *Covington v. Wyatt,* 196 N. C., 367, 145 S. E., 673.

The law which seeks to be impartial, and to establish a just rule for both parties, prescribes the standard of duty which a physician and surgeon owes to his patient. The duty arises out of the relationship, which is voluntary and contractual in its nature. The law recognizes that medicine and surgery is both a science and an art, and requires that one who professes knowledge of the science, and skill in the art, shall have such knowledge and skill as are ordinarily possessed by men of his profession, similarly situated. This is not all. He is required to exert his best judgment and use his best skill in the treatment of his patient. If he has fully measured up to these requirements of the law, he cannot be held liable for consequences which no human agency can ordinarily prevent. At best the science is empirical and the practice of the art subject to limitations. Neither justice nor sound policy requires that a physician or surgeon, although learned in his science and skilled in the practice of his art, shall be an insurer of his patient's recovery and restoration to his previous health and physical strength and condition.

It is provided by statute in this State that no person shall practice medicine or surgery, or any of the branches thereof, nor in any case prescribe for the cure of diseases unless he shall have been first licensed and registered so to do as provided by law. N. C. Code, 1927, sec. 6622. Every applicant for license to practice medicine or surgery in this State must show that he is at least twenty-one years of age, and of good moral character. N. C. Code, 1927, sec. 6615. No license shall be

issued unless the applicant upon an examination by the State Board of Medical Examiners, shall be found to have completed the course of study prescribed by statute and to have a competent knowledge of the subjects included in said course of study. N. C. Code, 1927, sec. 6613. It would seem to be at least a reasonable inference that a physician and surgeon who is duly licensed to practice his profession in this State, possesses that degree of knowledge of his science and of skill in his art, which is required by the law, and that degree of moral character which insures his best judgment in the professional care and treatment of his patient. At least, one who alleges to the contrary with respect to such a physician and surgeon, is and should be required to offer evidence to sustain his allegations. Otherwise, his action for the recovery of damages alleged to have been caused by negligent and unskillful treatment, should be dismissed.

As we are of the opinion that the judgment should be reversed and the action dismissed, it is unnecessary to consider the assignments of error based upon exceptions with respect to the release, which plaintiff executed to the driver of the automobile. We do not decide the question discussed in the argument of this appeal and in the briefs filed in this Court, as to whether the release executed by plaintiff bars his recovery from the defendant in this action.

Reversed.