LUKE B. SMITH v. DR. J. C. McCLUNG.

(Filed 18 November, 1931.)

**1. Physicians and Surgeons C b—Evidence held insufficient to be submitted to the jury in action against dentist for malpractice.**

A dentist is not held as a warrantor in the exercise of his professional duties, and the doctrine of *res ipsa loquitur* only applies when from the result there is more than an inference of improper treatment, and where a dentist extracts a tooth from the mouth of a patient on Sunday at the patient's request, and the point of a hypodermic needle used in the operation breaks off in the gum of the patient, and the dentist, without informing the patient of the fact, leaves the broken point in the gum, and tells the patient to return the following day, at which time he tells patient the facts and offers to extract the broken point without pain, and thereafter again requests to be allowed to do so, but the patient refuses to allow

him or anyone else to attempt to extract it, *Held:* the doctrine of *res ipsa loquitur* does not apply to the facts of the case, and in the absence of evidence of some unskillfulness of the dentist or of improper work, or improper or defective instruments to perform it, the case should have been dismissed on motion as of nonsuit.

2. **Negligence A e—Applicability of the doctrine of res ipsa loquitur.**

The doctrine of *res ipsa loquitur* does not apply where more than one inference can be drawn from the evidence as to the cause of the injury, or where the existence of negligence is not the more reasonable probability and the matter is left in mere conjecture, or where the injury results from an accident as defined and contemplated in law.

CIVIL ACTION, before *Harwood, Special Judge,* at February Special Term, 1931, of FORSYTH.

The plaintiff alleged and offered evidence tending to show that on Sunday, 25 November, 1928, he was suffering severe pain from toothache and had suffered from said cause all night the preceding night. About two o'clock on Sunday he went in search of a dentist and found the defendant going to his office. The office assistant of defendant was not in the office, but plaintiff told the defendant that the tooth was "hurting so bad and giving me so much trouble that I wanted it out at once." Thereupon, the defendant directed the plaintiff to be seated in a dental chair and undertook to extract the tooth. The tooth was a jaw tooth, and, according to the usual custom and practice, the defendant inserted novocaine into the gum with what appeared to be a proper needle. In some way the point of the novocaine needle, about a quarter of an inch long, broke off in the gum. The defendant, however, proceeded to extract the tooth and to treat an abscess at the root of the tooth and undertook to remove the needle. After working for some time in an effort to extract the needle the defendant told the plaintiff to come back to his office the following day at twelve o'clock. The plaintiff went to work Monday morning and came back to defendant's office about twelve-thirty. It seems that the defendant had taken an X-ray picture of plaintiff's tooth, and when the plaintiff returned to the office on Monday the defendant informed him for the first time that the point of the needle had been broken off in the gum, and that he had been unable to remove it Sunday because he had no help in his office, but that if plaintiff would have a seat in the dental chair he would remove the needle then and there without pain. The plaintiff refused to permit the defendant to attempt to remove the needle. Thereupon, the plaintiff went to see another dentist who treated his mouth. Plaintiff further testified when he was in the office of defendant on Monday he told the defendant he had planned to take a trip on Thanksgiving and asked the defendant if in his opinion the trip could be made safely. The

defendant informed him that there was no reason for delaying the trip. On 11 December, the defendant called the plaintiff and again insisted that he be permitted to remove the needle, and told him he had arranged with a physician who had a fluoroscope to assist in removing the needle. Again the plaintiff refused to permit the defendant or anyone else to remove the needle. The needle is still in plaintiff's gum and he testified he had suffered considerable pain and inconvenience.

There was further evidence that the defendant informed the plaintiff that the reason he had not told him of breaking off the point of the needle when the tooth was extracted on Sunday was because the plaintiff was very nervous and suffering pain, and he thought it was better not to disturb him until Monday. There was no evidence of any defect in the needle or that the needle used to insert novocaine was not the usual and customary instrumentality used by dentists and surgeons for such purposes. Nor was there any evidence of negligence or want of due care in treating or extracting the tooth. Dr. Flowers, a dental surgeon, was offered as a witness for the plaintiff and testified that he saw the plaintiff on Tuesday following the extraction of the tooth, and that there was some swelling in the upper gum of plaintiff's mouth, but that "the swelling of the gum was just that which would be expected of an operation of that kind." Said physician further testified that his record showed that on 17 December, he examined the plaintiff and that "the cavity where the tooth was pulled was healing up nicely."

At the close of plaintiff's evidence there was motion for nonsuit, which was denied, and the defendant excepted.

Issues of negligence and damages were submitted to the jury and answered in favor of plaintiff. The verdict awarded damages in the sum of $300.

From judgment upon the verdict the defendant appealed.

*Parrish & Deal for plaintiff.*
*Manly, Hendren & Womble for defendant.*

BROGDEN, J. Does the principle of *res ipsa loquitur* apply when the point of a novocaine needle breaks off in the gum or jaw of a patient when the dentist is using the needle to insert novocaine preparatory to extracting a tooth?

The evidence does not disclose any defect in the needle or that the needle was not of the type approved and in general use for the purpose of inserting novocaine. There is no evidence that the dentist did not possess the degree of skill and learning contemplated and prescribed by law; nor was there any evidence that the tooth was otherwise extracted in a careless or negligent manner or not according to the usual

practice and custom of skillful dentists in performing such operations. Hence, if the principle of *res ipsa loquitur* does not apply, the case should have been nonsuited.

Dentists, in their particular fields, are subject to the same rules of liability as physicians and surgeons. *McCracken v. Smathers,* 122 N. C., 799, 29 S. E., 354; *Nash v. Royster,* 189 N. C., 408, 127 S. E., 356. Nevertheless, neither dentists nor physicians or surgeons have been held to be insurers. This idea was expressed many years ago by *Judge Taft,* afterwards President of the United States and *Chief Justice* of the Supreme Court of the United States, in *Ewing v. Goode,* 78 Fed., 442. In that case he wrote: "A physician is not a warrantor of cures. If the maxim, *'res ipsa loquitur,'* were applicable to a case like this, and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the 'ills that flesh is heir to.' "

The Iowa Court, in *Evans v. Roberts,* 172 Iowa, 653, discussing the liability of a surgeon who cut off a portion of plaintiff's tongue in performing an operation for adenoids, said: "If a surgeon, undertaking to remove a tumor from a person's scalp, lets his knife slip and cuts off his patient's ear, or, if he undertakes to stitch a wound on the patient's cheek, and, by an awkward move, thrusts his needle into the patient's eye, or if a dentist, in his haste, leaves a decayed tooth in the jaw of his patient and removes one which is perfectly sound and serviceable, the charitable presumptions which ordinarily protect the practitioner against legal blame where his treatment is unsuccessful, are not here available. It is a matter of common knowledge and observation that such things do not ordinarily attend the service of one possessing ordinary skill and experience in the delicate work of surgery."

The Virginia Court discussed the question in *Henley v. Mason,* 153 S. E., 653. The doctrine of *res ipsa loquitur* was held inapplicable upon the facts as disclosed by the record, even though the surgeon in performing a tonsil operation knocked out two of plaintiff's front teeth. The same question was considered in *Hill v. Jackson,* 265 S. W., 859. In this case the Missouri Court held that the principle did not apply, although the dentist had dislocated the jaw in extracting a tooth. These cases do not deny the application of the principle where the facts warrant it, but merely hold that the facts of the particular cases do not justify the application.

There are two cases directly in point. The first is *Ernen v. Crofwell,* 172 N. E., 73. In this case a dentist inserted a novocaine needle into

a patient's gum in order to deaden pain and the needle broke. The dentist made no effort to remove the needle and did not inform the patient of the fact that a portion of the needle had broken off in administering the novocaine. The Supreme Judicial Court of Massachusetts said: "It is plain that the mere breaking of the needle inserted in the plaintiff's jaw was not evidence of negligence. We are of the opinion, however, that the jury would have been warranted in finding that, if the defendant had exercised that degree of skill and care reasonably to be expected that he possessed, he would have discovered that the needle had been broken; and that he should either have removed the part remaining in the plaintiff's jaw or have informed her of its presence there so that she could have had it removed."

The other case is *Alonzo v. Rogers,* 283 Pac., 709. In this case the Supreme Court of Washington held that the principle of *res ipsa loquitur* applied and carried the case to the jury.

The general proposition of law, together with the authorities upon various aspects of the question, appears in a note in Illinois Law Review of November, 1931, page 350, and also, in the United States Law Review of November, 1930, page 609.

Irrespective of the theories of application of the principle held by the courts in other jurisdictions, this Court has held that the principle does not apply: (1) Where more than one inference can be drawn from the evidence as to the cause of the injury; (2) where the existence of negligent default is not the more reasonable probability, and where the proof of the occurrence, without more, leaves the matter resting only in conjecture; (3) where the injury results from accident as defined and contemplated by law. *Springs v. Doll,* 197 N. C., 240, 148 S. E., 251.

In the case at bar, the defendant did not manufacture the needle which broke. There is nothing tending to indicate there was any defect in the needle or that if any defect existed the same could have been discovered by the most rigid inspection. There is no evidence that the needle was used in a careless or negligent manner or by an unskilled or incompetent dentist. Indeed, the dentist discovered the broken needle and undertook to remove it with all facilities available to him at the time. He requested the plaintiff to return to his office next day and assured him that he could remove the needle readily and without pain, but the plaintiff refused not only on that occasion but on subsequent occasions to permit either the defendant or any other surgeon, physician or dentist to remove the needle. He was at work next day, and so far as the record discloses never lost an hour from his accustomed duties. Therefore, to hold that the doctrine of *res ipsa loquitur* applies to the

facts of this case, is to all practical purposes, to impose the liability of insurer upon a dentist, physician or surgeon, and no court has ever gone that far. Manifestly, there may be particular states of fact which warrant the application of the principle in determining the liability of dentists, physicians and surgeons, but the court is of the opinion and so holds that the facts in this case do not warrant the application of the principle, and the motion for nonsuit should have been allowed.

Reversed.