DAVID A. McLEOD v. DR. V. M. HICKS.

(Filed 29 June, 1932.)

1. **Evidence K b—Layman may testify to fact of incision in eyeball.**

   A layman or nonexpert witness may testify to the fact and location of an incision or wound in the exterior of the body, including the eyeball.

2. **Physicians and Surgeons C b—Where operation is performed in proper manner with required skill damages may not be recovered therefor.**

   Where an incision for the removal of a cataract is made at the proper place and in the proper manner with the required skill and care according to all the expert testimony relating thereto, a patient later losing his eye after such operation may not recover damage resulting from the operation thus properly performed.

3. **Same—Where loss of eye is result of disease not aided or augmented by operation surgeon is not liable therefor.**

   Where a patient loses an eye as the result of disease and there is no evidence that an operation thereon for cataract aided, increased or accelerated the course of the disease the patient may not recover of the surgeon performing the operation for the loss of the eye.

**4. Evidence K b—Whether delicate operation was performed in correct manner with required skill is exclusively a matter of expert testimony.**

Whether an operation for the removal of a cataract was performed in the correct manner by a proper incision at the correct place and with the skill required by law is exclusively a matter of expert testimony.

**5. Physicians and Surgeons C b—Where there is no evidence that alleged improper incision caused injury nonsuit is proper.**

Where a patient brings action for the loss of his eye after an operation thereon for cataract, and the evidence discloses that the defendant surgeon possessed the required skill and care, but the patient seeks to recover on the ground that in performing the operation the surgeon negligently inflicted an incision in the eyeball, but offers no evidence that such incision caused the loss of the eye, and there is evidence that the operation had been properly and skillfully done and that the loss of the eye resulted from other causes, the surgeon s motion as of nonsuit is properly allowed.

**6. Evidence F b—Declarations and exclamations of defendant held not to constitute admission of liability.**

Certain declarations and exclamations made by the defendant in this case are held not to constitute an admission of liability.

CIVIL ACTION, before *Small, J.,* at December Term, 1931, of WAKE.

The plaintiff instituted this action against the defendant to recover damages for negligence in performing a cataract operation. The evidence for plaintiff tended to show that he had been suffering with a cataract on his left eye for more than twenty years and had been treated by the late Dr. Lewis. The defendant became associated with Dr. Lewis and examined the plaintiff during the year 1922. On 4 September, 1926, the plaintiff decided to undergo a cataract operation. This operation was performed in two stages. The first stage operation was performed by the defendant on or about 4 September, 1926. There is no question but that plaintiff received proper treatment at this time. He testified that thereafter he could count the spokes in an automobile across the street and could distinguish faces of his friends, and see the straps on the slippers of his wife. On 27 September, 1926, the plaintiff returned to the hospital in order for the defendant to perform the final cataract operation. The operation was performed on said date by the defendant assisted by Dr. Wilkins. The narrative given by the plaintiff is as follows: "They prepared the left eye for the operation . . . and I could feel the sting of the instrument. Suddenly I felt a sharp pain which I remember was very painful and I drew up and the doctor said: 'Oh, isn't that a pity?' and he made a kinder little noise and something made a sound on the floor." Plaintiff testified that after the operation he was returned to his room in the hospital and suffered great pain, and that he remained in

the hospital about nine days. Four or five days after he returned from the hospital he requested his wife to lift the bandage from his eye "and found a gash in the eyeball just off to the edge of the sight. I mean the colored part of the eye. I saw that myself. The gash was just off the colored part of the eye, the upper part. It looked to me that the opening was about the size of the end of the wooden part of an ordinary match. . . . It was on the white part." The wife of plaintiff testified that she saw a gash in the eye "just above the dark part . . . about an eighth of an inch or a quarter of an inch. . . . There was something running out of that gash. He wore a kinder black patch over the top. I had to take that off and there was cotton packed underneath that. I could see on that something that seemed to be kinder gummy, sticky, jelly form. . . . It was whitish looking." Two sons of plaintiff also testified that they saw the gash which they described as being "a quarter of an inch from the blue part of the eye, . . . and there seemed to be some kind of substance running out of it—a white mucous, jelly like substance." Two friends of plaintiff also testified as to the gash or cut in the white part of the eye. Plaintiff continued to visit the defendant for treatment until February, 1927. He testified that the defendant told him from time to time that the eye was "hemorrhaging itself to death." In February, 1927, plaintiff testified that he asked the defendant: "Doctor, tell me if you didn't puncture that eyeball?" Thereupon the defendant turned away from him, walked to the window, looked out, turned back and said: "I did, I'm sorry." The plaintiff's eye was removed about three years after the operation.

The defendant and Dr. Wilkins, who assisted in the operation, testified that the incision was made in the plaintiff's eye at the cornea scleral junction and not in the white part of the eye. The defendant testified: "I cut a little flap of the conjunctiva at that time. The conjunctiva is the membrane that covers the white part of the eye that goes on back and is reflected under the lid. It is comparatively thin. . . . mucous membrane. . . . It might appear as a cut . . . in the white part of the eye." All the physicians and surgeons who examined the eye after the operation, testified that the method of operation described by the defendant was the proper method of performing a cataract operation, and that the scar was at the cornea scleral junction, and that there was no cut, gash or incision in the white part of plaintiff's eye. They further testified that a cataract could not be removed from the cut described by the plaintiff in the white of his eye, for the reason that such incision would not be large enough, and that it would be impossible to remove a cataract from such a cut. Some of the physicians testified in response to hypothetical questions that a cut in

McLeod v. Hicks.

the white part of the eye of the nature described by the plaintiff would not have been a proper operation for a cataract.

At the conclusion of all the evidence the trial judge sustained a motion of nonsuit and the plaintiff appealed.

*Dupree & Strickland, L. Bruce Gunter and John W. Hinsdale for plaintiff.*

*Oscar Leach and Jones & Brassfield for defendant.*

BROGDEN, J. There is much technical testimony in the record involving the complicated structure of the human eye and its functions. The law of the case is simple and well settled. The legal duty imposed by law upon physicians and surgeons has been declared in detail in the cases of *Nash v. Royster,* 189 N. C., 408, 127 S. E., 356; *Smith v. McClung,* 201 N. C., 648. It is to be further noted that *res ipsa loquitur* does not apply to the facts in this case. *Spring v. Doll,* 197 N. C., 240, 148 S. E., 251; *Smith v. McClung,* 201 N. C., 648.

There are certain facts which are uncontroverted, which may be stated as follows:

1. The plaintiff had a cataract in his left eye which had been in existence more than twenty years.

2. The preliminary or first stage operation for the removal thereof was properly done.

3. The cataract was actually removed on or about 27 September, 1926.

4. The defendant possessed the degree of learning, skill and surgical ability required by law.

5. A proper incision, at a proper place, and with the exercise of proper technique for the removal of the cataract had actually been made in the eye.

6. Plaintiff suffered pain after the operation and finally lost the eye entirely by removal about three years thereafter.

The plaintiff, notwithstanding the fact that all the evidence disclosed that the defendant possessed the requisite degree of skill and ability, contends that the defendant did not actually apply such skill in performing the operation for the reason that an incision was made in the white part of the eye penetrating the posterior chamber, thereby causing the loss of the vitreous humor therein and the consequent destruction of the eye. The defendant, upon the other hand, by the uncontroverted testimony of experts, shows that an incision was properly made at the cornea scleral junction, and that when the cataract was removed it was discovered that the eye was practically destroyed by disease, and particularly that the vitreous humor had greatly deteriorated.

McLEOD v. HICKS.

Upon these contentions the first question to arise is: Was there an incision in the white of the eye, a quarter, an eighth or a sixteenth of an inch above the colored portion? The plaintiff, who is a layman, and certain members of his family and friends, who are also laymen, testified that there was such an incision in the white of his eye. All the medical experts, who examined the eye, testified that there was no such incision in the white of his eye, but that the incision was in the cornea scleral junction. It is urged by the defendant that the determination of whether there was a cut in the white of the eye is exclusively a technical question involving exclusive questions of science, and that, therefore, lay testimony would not be competent or permitted to be given determinative weight. This contention cannot be sustained for the reason that it cannot be said as a matter of law that a layman cannot testify as to the location of a knife incision or wound upon the exterior of the body, or that such testimony should not be entitled to the same weight as that of an expert witness. Therefore, in passing upon a judgment of nonsuit, it must be assumed that there was a cut or incision in the white portion of the eye.

The uncontroverted testimony also discloses that there was a cut or incision in the cornea scleral junction through which the cataract was actually removed. The plaintiff is not entitled to recover for any injury or damage occasioned by the incision in the cornea scleral junction for the reason that all of the expert testimony is to the effect that said incision was properly made in the exercise of the requisite degree of skill, and that in fact the cataract could not have been removed in any other way or manner; that is to say, the evidence fails to disclose any negligence whatever traceable to the incision made by the defendant at the cornea scleral junction. But the plaintiff asserts that the destruction of his eye was the proximate result of the cut, gash or incision in the white part thereof. He proceeds upon the theory that the incision or gash in the white part penetrated to the posterior chamber of the eye, severing the membranes therein and causing the escape of the vitreous, which oozed and exuded through said incision as testified to by himself and his lay witnesses. The defendant combats this theory upon the ground that the jelly like fluid exuding from the incision testified to by plaintiff was the ordinary result of the conjunctival incision. Moreover, there was testimony that if the posterior chamber of the eye had been penetrated, the vitreous humor would have escaped immediately.

In the final analysis the plaintiff sues to recover damage for the loss of his eye, which he asserts was proximately caused and brought about by the negligence of the defendant in performing the operation complained of.

McLEOD *v*. HICKS.

The evidence discloses three and only three possible causes for the loss of the eye.

The first is, that the eye was destroyed by the ravages of disease, long existent and progressive in nature, and that the operation merely disclosed the deterioration already accomplished. Obviously, in the absence of evidence that the operation aided, increased or accelerated the course and movement of natural causes, the defendant would not be liable in damages.

The second is, that the operation performed by making an incision at the cornea scleral junction and removing the cataract was negligently done resulting in total loss of the eye and consequent damage.

But all the testimony is to the effect that the cataract was actually removed and the testimony of all the experts discloses clearly and unequivocally that said cataract was properly removed, by a proper incision at the cornea scleral junction, in the exercise of that technique and skill required by law. Manifestly the proper skill and technique required and employed for such a delicate operation is exclusively a question of surgical science and care, and hence to be ultimately determined by expert testimony. Moreover, there is no evidence that the cornea scleral junction incision or the removal of the cataract was negligently made or performed.

The third cause for the loss of the eye and the one relied upon by the plaintiff is that the cut or gash in the white portion of the eye was the proximate cause of the injury. In support of this position, he calls attention to the testimony tending to show that after the preliminary operation, his vision improved so that he could see the spokes in an automobile wheel and the straps upon the shoes of his wife.

But did the injury result from disease? Did it result from the cornea scleral junction incision, or did it result from the cut in the white portion? Assuming that the cut in the white was negligently made, there is no evidence that such incision caused the loss of the eye, and without such evidence the plaintiff is not entitled to recover.

The plaintiff relies upon certain exclamations or declarations made by the defendant at the time of the operation and later at a conference in his office. The defendant denies the making of such exclamations or declarations, but assuming they were made, they do not constitute an admission of liability.

Affirmed.