SCHENCK, J., took no part in the consideration or decision of this case.
Plaintiff alleged and offered evidence tending to show that on 6 December, 1929, while working in a mine at the bottom of the shaft, a long slab or rock fell upon him, inflicting serious and permanent injury in that his thigh was broken, and in addition, he suffered a compound fracture of both bones of the lower leg. A few minutes after he was injured he was carried to the Memorial Hospital at Asheboro, which was operated by the defendant, C. A. Hayworth. Plaintiff said: "Dr. Lambert was Dr. Hayworth's assistant. I did not see Dr. Hayworth then. It was the next morning after I got there before I saw Dr. Hayworth. Before I saw Dr. Hayworth Dr. Lambert put this bone back in the leg. . . . My left leg was broken above the knee, and also, below the knee. The bone that was broken above the knee did not stick out of the flesh, but the bone below the knee was sticking out *Page 722 
of the flesh. I did not receive any other treatment from the time I reached the hospital and the time I saw Dr. Hayworth next morning. . . . He did not give me any treatment at that time, just looked at the leg and said it was a bad looking job. Later on in the day I saw Dr. Lambert about nine o'clock. He didn't do anything more than dress the wound here. . . . They changed the gauzes on it and washed it with alcohol. They didn't attempt to reduce the fracture or give any treatment above the knee. They gave me one hypodermic when I arrived at the hospital. They didn't give me any hypodermic next morning. . . . On that second day I didn't receive any treatment by either one of the doctors. . . . They did the usual thing. They dressed the wound below the knee. They didn't at that time administer any treatment or make any examination of my leg above the knee. That was all that was done on the third day. . . . My back and leg was hurting and I hurt all over. I told Dr. Hayworth about it. He didn't give me any hypodermic treatment at that time. He came down pretty early the fourth morning raising sand because I made a racket that night on account of my leg hurting so bad. He came around and said he didn't mean to have any such damn racket around there. I told him why I made the noise. I told him I asked for a hypodermic or something to ease the pain, and he said, `I want you to understand I'm running this place here and not you.' . . . On the fourth day they just dressed this place and put some sandbags against this here. The purpose of the sandbag I suppose was to keep the leg from working about. The sandbag was placed on each side of the knee up here. . . . On the fifth night he did not administer any treatment, only asked me how I was feeling. . . . He didn't make any examination of my upper leg or lower leg at that time. That day the gauze was changed here as usual and washed with alcohol and painted with mercurochrome. . . . On the eighth day Dr. Cole, Dr. Hayworth and Dr. Lambert came in the room around nine o'clock prepared to set the leg. . . . Dr. Cole suggested that they put me on a regular hospital bed and put my head where my feet ought to be so they could elevate this leg, and also suggested they use a different rig from what Dr. Hayworth had planned to use. . . . So Dr. Cole went ahead and set the limb. . . . They hung three weights to it. . . . The weights were window weights about 1 1/2 inches in diameter and I would say fourteen inches long. . . . I would say those three weights weighed about fourteen pounds. . . . I was not given any hypodermic treatment that day or at any other time. There was nothing more done than Dr. Lambert dressed this place every day and occasionally those weights would pull off, this tape would pull loose from perspiration and so on. The weights were attached to my leg by adhesive tape. *Page 723 
. . . The weights came off my foot seven or eight times. They would stay off from five to fifteen hours. . . . This scar also was caused by the adhesive tape pulling off and the hole was to the bone. Before it formed a scab when the tape came off the flesh pulled off with it and after the scab formed, the scab pulled off with it."
The above excerpt from plaintiff's testimony is typical of a volume of testimony to the same general effect.
Plaintiff testified further that he left the hospital about 12 February and was immediately taken to a hospital in Sanford to be treated by Dr. Scott at the Scott Hospital, where plaintiff remained for about nine weeks. Dr. Scott was dead at the time of the trial, and the plaintiff testified that he could not put any weight on his leg and that he had suffered serious injury, caused and brought about by the negligence and malpractice of the defendants in the treatment administered by them at the hospital in Asheboro.
The defendant Hayworth filed an answer alleging in general terms that the plaintiff had sustained a painful and serious injury, and that at the time he was brought to the hospital the wounds were filled with dirt and mud and that he had given to the plaintiff his best judgment and skill in the treatment of his injuries. He further alleged that he had called in his codefendant, Dr. Cole, an eminent surgeon, and that both physicians had exercised their best skill and judgment in treating the plaintiff. Dr. Cole filed an answer stating that he did not have sufficient knowledge or information to form a belief as to whether Dr. Hayworth was a physician in Asheboro. This seems to have been an inadvertence as he alleges that he was called into consultation by Dr. C. A. Hayworth, and after such consultation "gave his opinion based upon his best judgment as to the best manner and method of treating the plaintiff, and this defendant had no further connection with the case and was not further consulted about the plaintiff."
The defendants offered no evidence and there was no medical testimony in behalf of the plaintiff.
At the conclusion of evidence of plaintiff the trial judge sustained a motion of nonsuit and the plaintiff appealed.
It was said in Pendergraft v. Royster, 203 N.C. 384, 166 S.E. 285, that "The general rule is to the effect that there is in malpractice actions no presumption of negligence from error of judgment in the diagnosis by a doctor of the patient's illness, or in the *Page 724 
treatment prescribed in the failure to successfully effect a remedy or to accomplish as good results as some one else might have done. A doctor is neither a warrantor of cures nor an insurer."
The evidence discloses that the plaintiff sustained terrible injuries and doubtless suffered great pain and discomfort, but injury and suffering alone are not sufficient to constitute a cause of action for malpractice in the absence of evidence tending to show that the physician did not possess the requisite degree of skill or that he failed to use such skill in the treatment of the patient.
The defendant had duly subpoenaed ten physicians as witnesses. These witnesses were not sworn or tendered for the reason that a judgment of nonsuit was entered. However, the trial judge found that all of the witnesses were experts and allowed each of them a fee of $20.00 per day "for two days attendance fees as expert witnesses to be taxed as a part of the cost of the case." The plaintiff excepted to the order upon the ground that "the party cast shall not be obligated to pay for more than two witnesses to prove a single fact." C.S. (Michie's Code, 1931), 1275. This exception is not sustained. C.S. (Michie's Code, 1931), 3893, empowers the trial judge to allow expert witnesses "such compensation and mileage as the court may in its discretion order." See Chadwick v. Ins. Co., 158 N.C. 380,74 S.E. 115. The judgment decreed that the plaintiff "pay the costs of the action, to be taxed by the clerk of the Superior Court." Obviously the remedy available to plaintiff is to lodge a motion to retax the cost.
Affirmed.
SCHENCK, J., took no part in the consideration or decision of this case.