BARNHILL, J., took no part in the consideration or decision of this case.
This is an action for actionable negligence, for malpractice, brought by plaintiff against defendants, alleging damage.
The plaintiff alleged: "That the defendants were guilty of negligence in that they carelessly and negligently applied an overdose or overexposure of X-ray treatment to the plaintiff, and that (a) their use of the X-ray or X-ray instrumentality was not in proper manner; (b) that the defendants were employed, and retained careless and negligent agents, assistants, or substitutes directed to treat the plaintiff; (c) they negligently committed the care and treatment of the plaintiff to a negligent, careless, and incompetent person, the said person being a nurse, agent, employee, and substitute of the defendants; (d) that the defendants, after having contracted and agreed for the treatment of the plaintiff, and to attend to the treatment connected therewith in a careful and approved manner, negligently turned the plaintiff over to careless and incompetent agents and employees."
The defendants denied the allegations of the complaint.
Plaintiff alleged: "That the defendants R. L. Pittman and W. T. Parker are now and were at the times hereinafter mentioned . . . physicians and surgeons engaged in the practice of their profession in the city of Fayetteville, North Carolina." That he had, about 1 December, 1934, consulted defendant W. T. Parker, a physician, about a growth behind his right ear, known as keloid, and was advised that it should be removed by X-ray treatment. That the defendant Parker "directed the plaintiff to go to a Miss Sykes, who was located in the said Pittman Hospital, for X-ray treatment, the said Miss Sykes being then an agent of the defendants and employed by them to render X-ray and other treatment to their patients. Pursuant to the direction of the said W. T. Parker, the plaintiff went to the said Miss Sykes and was given X-ray treatment for the removal of the keloid for which he was being *Page 681 
treated, and thereafter he was directed by the said Miss Sykes and the defendant W. T. Parker to return to Fayetteville two or three months later for another treatment in the same matter."
In answer defendant Parker says: "That except for the one consultation during the year 1934, and possibly one other time two or three years prior thereto, this defendant has never prescribed for or treated the plaintiff as his patient. And the relation of physician and patient, since 1934, has never existed between the plaintiff and this defendant; and if the X-ray treatments were ever administered by Miss Sykes, or any other person, on the plaintiff, it was done at the plaintiff's own request, and not upon the recommendation or prescription of this defendant."
Plaintiff, on cross-examination, testified: "It was in the fall of 1934, when I consulted Dr. Parker, and I did not consult him in December, 1931. That is my best recollection. I did not consult him in 1931. In 1911, Dr. Pittman, or Dr. Highsmith, operated on my neck for a keloid. I was next treated for it at Johns Hopkins in Baltimore, a year or two later. I was there about a week and they cut the thing out. I have had a scar there since. It did not open and close up until I had X-ray treatments. After my operation the keloid came back. It is a ridge sort of like your finger and is just a hard place. After I was treated in Baltimore I was again treated by Dr. Pittman several times. Dr. Pittman administered X-ray treatment about 20 years ago. It was in 1934 that Miss Sykes administered the treatments. She gave me two treatments. I felt no pain at all when the treatments were administered, and it was about six weeks before I began to feel any pain."
Dr. Nash, a witness for plaintiff, testified: "I have never seen an X-ray burn, as very few folks have them. I have treated Mr. John R. Davis, during the last two years, for an ulcer back of his ear. It was an ulcer mastoid. A keloid is an over-growth of scar tissue, connective tissue, usually it occurs in a scar and the scar just grows, over-grows, usually beyond the surface of the skin. I have had experience with burns. They are generally recognized first, second, and third. First, just a little irritation of the skin; second, where the skin is destroyed; third, where the skin subcutaneous and muscles are destroyed. I first examined Mr. Davis about 18 or 20 months ago, and found an ulcer, very much as it is now. The fact that he has had this ulcer for 18 or 20 months makes it chronic, and it is impossible to tell how long it will remain without healing. I know Dr. W. T. Parker. He has a splendid reputation as a skillful surgeon and physician."
At the close of plaintiff's evidence, the defendants in the court below made a motion for judgment as in case of nonsuit. C. S., 567. The motion was granted, the plaintiff excepted, assigned error, and appealed to the Supreme Court. *Page 682 
The plaintiff does not contend that there is liability on the part of the defendant Dr. R. L. Pittman, but the plaintiff contends that the court was in error in sustaining defendant's motion to nonsuit as to Dr. W. T. Parker at the close of the plaintiff's evidence. We see no error in the ruling of the court below.
In Pendergraft v. Royster, 203 N.C. 384 (393), it is written: "The general rule is to the effect that there is in malpractice actions no presumption of negligence from error of judgment in the diagnosis by a doctor of the patient's illness, or in the treatment prescribed in the failure to successfully effect a remedy or to accomplish as good results as someone else might have done. A doctor is neither a warrantor of cures nor an insurer." Connor v. Hayworth, 206 N.C. 721.
We see no sufficient evidence to be submitted to the jury. Taking the history of plaintiff's trouble, as given by himself on cross-examination and the testimony of Dr. Nash, his physician, we see no substantial injury, if injury at all, caused by the X-ray operator (if she was an agent of defendant Parker). Dr. Nash, 18 or 20 months before the trial, found an ulcer very much as it was at the time of the trial — it was chronic. It was ulcer mastoid. The allegations of plaintiff are not supported by proof. There is no sufficient probative evidence that plaintiff's condition was caused from the X-ray treatment complained of.
The evidence to be submitted to the jury must be more than conjectural or speculative. There must be evidence from which a jury might reasonably and properly conclude that there was negligence.
For the reasons given, the judgment of the court below is
Affirmed.
BARNHILL, J., took no part in the consideration or decision of this case.