STACY, J., concurring in part.
WINBORNE, J., concurs in concurring opinion. *Page 72 
This was a civil action brought by the plaintiff to recover damages for an alleged injury caused by the negligence of the defendants in not using due skill and care in his treatment while a patient in the Hamlet Hospital.
In his complaint plaintiff alleged, in substance, that he had a small bone in his left leg broken between the knee and ankle, and entered the hospital and was accepted for treatment; that he employed the defendant Dr. W. D. James "as surgeon and physician, to dress, heal, and cure said injured leg," and that Dr. James undertook the treatment; that his leg was placed in a cast after examination and diagnosis; but that the defendant James negligently, carelessly, and unskillfully performed the examination and diagnosis, and did not use proper skill in the treatment and care of plaintiff's injury; carelessly and negligently failing to treat the dislocation of the bone and to properly set it, so that the bone refused to heal and became permanently dislocated. Plaintiff further complained that at the time he placed himself under Dr. James for treatment only the small bone in his leg was broken, and that the defendant negligently broke the large bone and attempted to set it, but negligently failed to properly do so, so that the leg is now crooked and deformed, the bones of the leg never having been placed together. He claims that he remained in the hospital seventy days for treatment, and, after five weeks at home, went back to the hospital on crutches; that his leg is warped and crooked and he is unable to walk on that foot, because while he is standing up the foot on the left leg — the injured member — points inward to such an extent that it catches behind his right leg, and that he has virtually lost the use of that leg and has become a cripple.
He further complains that he was cut and seriously injured by faulty equipment used while he was confined to bed.
There is a further allegation that the negligent and unskillful manner in which his injury was treated caused the glands in his leg to swell up, abscess, and burst. There follow the usual allegations of physical suffering, mental anguish, and permanent injury.
The defendants, answering, deny these allegations, and in a further defense set up that the plaintiff's condition, if he suffers from any injury at all, came about through his own carelessness and negligence in refusing to follow instructions given to him at the time he left the hospital.
Upon the trial the case, in the main, was presented in the plaintiff's own testimony and the exhibition of the injured member. There was corroboration in some material parts, to which it is needless here to refer.
The evidence was substantially along the line of the pleading. Plaintiff testified that he was fifty-four years of age and a cotton mill worker; that he was struck from the rear by the fender of an automobile on the *Page 73 
back of the left leg, just below the knee; that he was unconscious when he was taken to the hospital, but woke up next morning, finding his leg hurt and in a "short cast"; that he had a conversation with Dr. James, who told him that he had a small fracture of the leg.
According to his narrative, after he was carried from the operating room he stayed in the room to which he was carried from 5 December to 29 December, when X-ray pictures were again made of the injured member. When carried back to his room, he stayed there that night without a cast on the leg, and was again taken to the operating room, and there Dr. James told him that the fracture was not set and knitting like it ought to; that he would have to put plaintiff to sleep and reset it.
Plaintiff's leg swelled up so that he could not move it, abscessed, and burst. He called his condition to the attention of Dr. James, who promised to come back in the room in a few minutes, but did not return for seven days.
Plaintiff gave further details as to his treatment in the hospital along the same line.
He testified that he saw Dr. James on 6 March and that the doctor told him his leg was not broken when he went to the hospital; that he, the doctor, had broken it and did not know why he did so, but promised to take him to a specialist to have some treatment.
Plaintiff exhibited his leg to the jury and gave testimony as to its condition, stating that the left foot would not pass the right foot in walking, because of the extent to which it was turned inward.
There was other evidence of a similar character, to which we need not advert. There was no evidence for defendants. Upon motion of the defendants' counsel, the court below rendered a judgment as of nonsuit and the plaintiff appealed.
The court below allowed defendant's motion to nonsuit upon the theory that in the absence of expert testimony the evidence, serious as it is, is not sufficient to go to the jury on the issue of defendant's failure to exercise due skill and care in his treatment of plaintiff.
We are urged to adopt the view that recovery cannot be had in any suit against a physician or surgeon for malpractice in the absence of expert medical testimony, except where the facts give rise to the application of the doctrine res ipsa loquitur. Pendergraft v. Royster, 203 N.C. 384;Ferguson v. Glenn, 201 N.C. 128; Nash v. Royster, 189 N.C. 408; andConnor v. Hayworth, 206 N.C. 721, are amongst the authorities cited in defendant's brief in support of this position. *Page 74 
It is further contended that the doctrine res ipsa loquitur applies only in instances where foreign substances, such as sponges, towels, needles, glass, etc., are introduced into the patient's body and left there.
In the case at bar, are the facts of the testimony competent to go to the jury without explanation by medical expert, either in their simple character as evidence, or as raising the doctrine res ipsa loquitur?
In the present case there are three outstanding phases of the evidence which may be discussed in this connection:
(a) The plaintiff testified that he was admitted to the hospital with a simple fracture of the small bone of the lower left leg; that he was unconscious when he was admitted to the hospital; that while he was unconscious a cast was put upon this leg, and later he was carried to the operating room, anaesthetized, and the bone reset; that the defendant later admitted that he had at this time broken the larger bone of the leg without knowing why.
(b) He testified that after the cast was put upon his leg, the defendant failed to give him further attention and did not see him for seven days. During this time his leg swelled up and burst and abscesses formed upon it and in the groin and burst.
(c) He further testified that when discharged from the hospital plaintiff's foot was turned inwardly at nearly a right angle to the line of advance in walking, and had to be swung out and around to get it from behind the other foot.
We are unwilling to decide that the doctrine of res ipsa loquitur as an instrument of proof in malpractice cases applies only where foreign substances have been introduced into the body during an operation and left there, although such instances are often used by way of illustration. With reference to the rule requiring expert medical testimony under certain conditions, the Court, in Pendergraft v. Royster, supra, adopts the following: "There is, however, a well recognized exception to the above rules, `where there is manifest such obvious gross want of care and skill as to afford, of itself, an almost conclusive inference' of negligence (Simak v. Foster, 106 Conn. 366; Donahoo v. Lovas, 288 P. 698). In such cases, neither affirmative proof of negligence, nor expert testimony as to want of skill, need be given by the plaintiff. This presumption of negligence from certain proven facts, otherwise known as the doctrine ofres ipsa loquitur, has been frequently applied, in actions for malpractice, to cases where the surgeon has left a foreign substance, such as sponges or gauze, in the patient's body after an operation."
This further quotation is made from Sherman and Redfield on Negligence, section 59: "The maxim res ipsa loquitur applies in many cases, for the affair speaks for itself. It is not that in any case negligence can be assumed from the mere fact of an accident and an injury, but in these cases the surrounding circumstances which are necessarily brought *Page 75 
into view, by showing how the accident occurred, contain without further proof sufficient evidence of the defendant's duty and of his neglect to perform it. The fact of the casualty and the attendant circumstances may themselves furnish all the proof that the injured person is able to offer or that it is necessary to offer."
Without the application of that doctrine to the incident of breaking plaintiff's leg during the course of the operation, it is sufficient to say that the evidence, especially in view of the admission of the defendant, and taken in connection with the result produced, is sufficient to carry the case to the jury.
"Res ipsa loquitur" — if we may use the phrase to represent the doctrine — is itself a mere mode of proof. After rebutting testimony is offered, it is still evidence to be reckoned with by the jury, just as any other evidence, according to its probative force. Frequently, evidence which is not attended with any technical presumption is more cogent.
We cannot accept the sweeping conclusion that no evidence except that presented in the guise of res ipsa loquitur is competent for the jury, in the absence of expert medical testimony. Such a ruling is neither justified by the present condition of medical and surgical science and practice, high as the standards are, nor is it consistent with the facts of common knowledge, experience, and ordinary intelligence. It would expropriate to the medical or surgical expert the entire field of human knowledge on a subject, some phases of which, at least, are sufficiently simple to be well understood and intelligently discussed by men and women in everyday life.
No doubt there are many instances in which the disease or injury involved, and its commendable treatment, belong to a high order of scientific and technical knowledge where expert medical testimony may be essential. But, does it require a medical expert to know that it is not always, at least, necessary to break the large bone of the leg in order to set the small bone? Does it take an expert to understand that seven days inattention, during which patient's leg swelled up and burst, indicates a want of the application of due skill and care?
The evidence of neglect of the patient for the prolonged period of seven days, while under the care of the defendant, and the attendant evidence of what took place during that time stands upon its own peculiar ground. There was no treatment involved in this upon which an expert witness might be called to pass. There was an utter want of the treatment — the failure to apply the due skill and care which the defendant under the law was bound to give; and this could be shown by the patient, a nonexpert witness.
We have left to consider the condition of the plaintiff's leg when discharged from the hospital and when exhibited to the jury. We do not *Page 76 
have to decide here that such a condition would raise the doctrine of resipsa loquitur, or whether, standing alone, it would afford evidence of malpractice, since it must be considered in the light of other competent evidence.
It is true that the physician or surgeon is not a guarantor of the result, but when the original conditions are known and the matter does not fall within the range of highly scientific and technical knowledge a result might be so grotesquely contrary to all human experience as to afford some evidence to go to the jury on such a question. It does not seem to be too far beyond the comprehension of the jury that in simple conditions, at least, broken bones will knit when the ends are brought together, and that the parts, by the application of ordinary skill and care such as is possessed and exercised by physicians and surgeons ordinarily, may be kept in reasonable relation, such, for instance, as to produce an approximately forward aspect of the toes of the foot. Some inference might be drawn from the existing condition, in view of the other evidence with which it is accompanied, that the bones were never properly set or were permitted to grow out of their proper relation through the want of due care and attention.
The condition of the plaintiff's leg and foot, as exhibited to the jury, could well be considered as corroborating the testimony of the plaintiff that the large bone in his leg had been broken during the operation, since it is difficult to see how the foot could have been rotated upon the axis of the limb to the extent described while the large bone was intact. At any rate, we cannot say that there is no evidence of negligence in this case to which the jury might not attribute the unfortunate condition exhibited by the plaintiff.
Upon considering a motion for nonsuit, the law requires us to take the evidence of the plaintiff in its most favorable light, assuming it to be true. As to the truth or falsity of the charges made, we express no opinion. No doubt, the defendant upon the trial of this cause will introduce evidence contradictory to that we have been discussing; but at present the evidence is too challenging in its effect not to require explanation.
The judgment of nonsuit is
Reversed.