THELMA L. LOVE v. T. R. ZIMMERMAN.

(Filed 22 May, 1946.)

1. **Trial § 22a—**

On motion to nonsuit plaintiff is entitled to the benefit of every fact and inference of fact pertaining to the issues involved which may be reasonably deduced from the evidence.

2. **Physicians and Surgeons § 18—**

Where, in an action for malpractice, plaintiff alleges that defendant failed to use reasonable care and diligence in the practice of his profession and alleges that he failed to use his best judgment in the treatment of the case, either allegation, when supported by competent evidence, is sufficient to carry the case to the jury on the issue of negligence, and allegation of incompetency on the part of the defendant to practice his profession is not necessary.

3. **Physicians and Surgeons § 20—Evidence of negligence of dentist in treatment of case after tooth extraction held sufficient for jury.**

Plaintiff's evidence tended to show the following circumstances. Defendant dentist, in attempting to extract a tooth, broke it off even with the gum and then attempted to remove the roots. Thereafter, he was notified on three or four occasions and over a considerable time that plaintiff's jaw was not healing properly. On plaintiff's third visit defendant took an X-ray but found nothing but a dry socket. Plaintiff then went to another dentist who took another X-ray and removed a particle of root and a "lot of little dead bone." *Held:* The evidence was sufficient to be submitted to the jury on the issue of negligence and the granting of defendant's motion to nonsuit was error.

APPEAL by plaintiff from *Bone, J.,* at February Term, 1946, of GUILFORD.

Civil action to recover damages for alleged negligence on the part of the defendant in extracting one of plaintiff's teeth and in the subsequent treatment of the case.

The defendant is a dentist in the City of High Point. On 27 August, 1945, the plaintiff went to the office of the defendant, told him she had a tooth that was paining her very much and that she "wanted it pulled." The defendant said, "all right"; whereupon the plaintiff asked the defendant "to be careful," as he had extracted a tooth for her about a year before and "had broken it off." The defendant deadened the gum with novocaine, and in about five minutes he extracted the upper left bicuspid. He seemed very nervous and exclaimed, "My goodness." The plaintiff remarked, "You broke it." He said "Yes" and then went to getting the pieces out. The tooth was broken even with the gum. The defendant tried to remove the roots with "a chisel and hammer." He got out two little pieces of root and told the plaintiff to come back if it

continued to hurt her. Two days later plaintiff's husband called the defendant and informed him that his wife's jaw was greatly swollen, looked red and was running pus. Defendant sent a prescription which was filled and taken without any beneficial results. The plaintiff continued to get "worse and worse every day." In about a week she returned to the defendant's office and asked to see him. The nurse said, "I can pack your jaw as good as he can," which she did and the plaintiff went home. The plaintiff then kept getting worse and went back to see the defendant. She said to the nurse, "I believe there is something in my jaw." Whereupon defendant's brother came in and looked at it. The nurse acquainted him with the plaintiff's fears. He said, "Did we tell you we got it all out?" The plaintiff replied, "Yes," and he said, "If we said we got it out, we got it out." Plaintiff then said she would like to have an X-ray; whereupon he said, "If you got money to throw away, we will X-ray it." Plaintiff replied that she had no money to throw away; the nurse again packed it with something and the plaintiff returned to her home.

Later the plaintiff went back to the defendant's office and he X-rayed it. The nurse developed it and said, "There is nothing in it." She packed it with cotton gauze or something before the defendant took the X-ray. The defendant said, "It is just a dry socket" and did nothing more.

Plaintiff testifies that she "was nearly crazy" from her suffering. She had Dr. Hester to take an X-ray, and then she went to Dr. Adams who also took an X-ray. "He went to work down in there and brought out bone and stuff and brought out flesh. . . . He got four or five pieces of bone out."

The plaintiff then went to the hospital. After leaving the hospital she had the two adjacent teeth—the eye tooth and the second bicuspid—also removed. The defendant told Dr. Adams that he was going to see the plaintiff while she was in the hospital, but he never did.

Dr. Hester testified that the X-ray he made showed "a suspicious looking area where that mark is—it looks to me like that particular tooth is one of the particular teeth in the mouth that has two roots on it and it looks like there might be a little piece of root—I couldn't say definitely about that, but it leads me to believe, since I marked it, that there possibly is a little piece of root there—that is just my opinion."

Dr. Adams testified that when the plaintiff came to see him she was in great pain. "I deadened the jaw with novocaine and took my little elevators and lifted out just a little particle of the end of a root of tooth. I didn't do that so easy. It took quite a while. . . . In the meantime I saw a lot of little dead bone, you call that necrotic, and I curated that out too."

From judgment of nonsuit entered at the close of plaintiff's evidence, she appeals, assigning error.

*Walser & Wright and C. N. Cox for plaintiff, appellant.*
*Sapp & Moore for defendant, appellee.*

Stacy, C. J.    The question for decision is whether the case as made, taken in its most favorable light for the plaintiff, survives the demurrer. We are disposed to think it does.

The plaintiff is entitled to the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence. *State Highway & Public Works Com. v. Diamond Steamship Transportation Corp., ante,* 371, herewith decided; *Davis v. Wilmerding,* 222 N. C., 639, 24 S. E. (2d), 337; *Diamond v. Service Stores,* 211 N. C., 632, 191 S. E., 355.

Here, a dentist who had, on a previous occasion, broken one of plaintiff's teeth when extracting it, was asked to be careful lest he break another in extracting it. He does break it off even with the gum. He then undertakes to remove the roots with a chisel and hammer. He fails to remove all the root and leaves some broken bone in the cavity. Two days later the defendant is notified that plaintiff's jaw was greatly swollen and was running pus. He sends a prescription which was filled and taken without beneficial result. In about a week, the plaintiff returns to defendant's office and his nurse packs her jaw and sends her home. Continuing to grow worse, the plaintiff again returns to defendant's office and states that she thinks there is something in her jaw and suggests that an X-ray be taken. Defendant's brother assures her there is nothing in it, and that an X-ray would only be a waste of money. The nurse again packs it with something and plaintiff returns home. Later the plaintiff returns, for the third time, to defendant's office and he takes an X-ray and finds nothing but a dry socket.

The plaintiff then goes to another dentist who examines her swollen jaw and removes "a little particle of the end of a root of tooth" and "a lot of little dead bone."

Viewing this evidence with that degree of liberality required on demurrer, we think the permissible inferences are such as to make the issue of liability one for the jury. *Mullinax v. Hord,* 174 N. C., 607, 94 S. E., 426; *McCracken v. Smathers,* 122 N. C., 799, 29 S. E., 354; *S. c.,* 119 N. C., 617, 26 S. E., 157.

It is true there is no allegation of incompetency on the part of the defendant to practice his profession. It is alleged, however, (1) that in the plaintiff's case the defendant omitted to use reasonable care and diligence in the practice of his art, or (2) that he failed to exercise his

best judgment in the treatment of the case. Either allegation, if supported by competent evidence, suffices to carry the case to the jury on the issue of negligence. *Nash v. Royster,* 189 N. C., 408, 127 S. E., 356.

Under the circumstances here disclosed, it is contended that reasonable prevision and foresight would have called for more attention and better care on the part of the defendant in the treatment of plaintiff's case. He was notified on three or four occasions and over a considerable length of time, that plaintiff's jaw was not healing properly; that the constant and growing pain indicated to the plaintiff and should have indicated to the defendant, the presence of some deleterious substance; that a proper examination or diagnosis would have disclosed and did disclose to Dr. Adams, the presence of hurtful bacteria. These contentions apparently find support in the evidence, at least enough to raise an issue of due care. *Brewer v. Ring and Valk,* 177 N. C., 476, 99 S. E., 358.

The case is not like *Smith v. McClung,* 201 N. C., 648, 161 S. E., 91, where the dentist wanted to do more, and the patient demurred, or *Scott v. Ins. Co.,* 208 N. C., 160, 179 S. E., 434, where the skill, competency and proper attention on the part of the dentist were all conceded. The present case, it seems to us, is controlled by the principles announced in *Long v. Austin,* 153 N. C., 508, 69 S. E., 500, and *McCracken v. Smathers, supra.* See 41 Am. Jur., 200; 48 C. J., 1121, *et seq.*

The result is a reversal of the judgment of nonsuit.

Reversed.