DAPHNE (MRS. BRYANT) HAZELWOOD v. DR. P. Y. ADAMS.

(Filed 11 January, 1957.)

**1. Physicians and Surgeons § 14—**

A dentist, under the same rules of liability applicable to physicians and surgeons, is required to bring to his patient's case a fair, reasonable and competent degree of skill, which others similarly situated ordinarily possess, and to apply that skill with ordinary care and diligence in the exercise of his best judgment.

**2. Physicians and Surgeons § 20—**

Evidence that defendant dentist in extracting two molars from plaintiff's mouth left imbedded roots, that infection in and around the broken roots was permitted to continue for some five months with two or three weekly operations which did nothing more than drain the infected area, that defendant then sent plaintiff to a specialist, who located the position of the roots by X-ray and removed them, is sufficient to be submitted to the jury on the issue of defendant's liability, and involuntary nonsuit was error.

JOHNSON, J., not sitting.

APPEAL by plaintiff from *Gwyn, J.,* September, 1956 Civil Term, GUILFORD Superior Court (High Point Division).

Civil action for damages for alleged negligence on the part of the defendant in the extraction of plaintiff's teeth and in the subsequent treatment. The plaintiff alleged the defendant (1) lacked the requisite skill, (2) failed to use reasonable care and skill in treating the plaintiff, and (3) failed to use his best judgment in the course of the treatment; and that as a consequence of defendant's negligence the plaintiff had been damaged in the sum of $30,455.32.

The defendant admitted accepting employment as plaintiff's dentist and treating her for a period of about five months. He denied that he

lacked the requisite skill as a dentist or that he failed to apply that skill or to use his best judgment in the plaintiff's case.

The plaintiff testified in considerable detail both as to the operation and the course of treatment thereafter. Her testimony in material substance may be summarized: She became the defendant's patient on 13 May, 1954. The defendant advised the extraction of two upper molars. In making these extractions the defendant broke off the roots, probed for them but left them imbedded in the jawbone. Three or four days after the operation the plaintiff returned to the defendant's office in great pain. The defendant, by means of a probe with a hook on the end, opened the infected area and drained a considerable amount of pus and blood. He instructed the plaintiff to go home and go back to work. Thereafter, two or three times each week, because of the terrible pain, she returned to the defendant's office where the treatment was repeated. On each occasion the infected area was opened and the accumulated pus drained. Except for a short time after each drainage operation she was constantly in pain. When asked if the roots were still imbedded, he said, "Possibly, possibly, possibly," but made no effort to remove them. This course of treatment continued for five months. At the end of that time plaintiff complained that something else had to be done. The defendant became angry and told her he would send her to a medical doctor to have the opening sewed up.

On 22 October, 1954, the plaintiff consulted Drs. Leath and Hinson, eye, ear, nose and throat specialists, who sent her to the hospital. Dr. Leath testified in part:

"She was admitted to the hospital with a complaint of pain in the region of the left antrum, extending into the left temple, a bad taste in her mouth, and at times some blood from the left side of her nose. Prior to the time Dr. Hinson and I had her hospitalized, at the time of the examination, all of the upper left pre-molar and molar teeth had been removed. A probe could be passed into the antrum. A probe could be passed through a sinus into the antrum. The antrum is a common name for the maxillary sinus, or air pocket, of the cheek. I'm sure that Dr. Hinson, prior to the time she was hospitalized, took some x-rays. After we had her in the hospital, we did operate upon her." . . .

"Dental x-rays had shown roots of teeth, and, of course, that was one of the reasons why the operation. . . . (X-rays) had shown two roots of teeth, and the x-ray of the sinuses had shown a polyp, or condition of a swollen membrane inside of the sinus. In the course of this operation these teeth, or roots, were removed. The root of the tooth located in the region of the sinus, through which

we could first pass a probe, was lying through the bony wall, but not through the mucous membrane, and this root was removed by passing a probe from inside of the antrum, and pushing it out into the mouth. The second root was imbedded in the bone, not into the antrum, and Dr. Hinson removed that through the first incision." . . .

"I think probing is a rather blind procedure for such a condition. I think it ought to be opened and removed."

Dr. Hinson testified in part: "Well, it's accepted practice to remove all the root; however, there may be occasion when you have a small fragment of root, when it would be inadvisable to intervene to remove a small flake of a tooth where surgical intervention might cause more damage than the root would be worth to recover. . . . I would say that is a little larger than a flake, that root in there that I am referring to is a little larger." (The above in reference to x-ray picture No. 1.) "That is a larger root there," (indicating x-ray No. 2). Referring to a dark line in the picture, "Well, this is a fistula, a track, a little track draining from an infected area. This is the little track opening from the infected area here into the mouth proper. That track comes from the area which I have surrounded as No. 1."

At the close of the plaintiff's evidence, judgment of involuntary nonsuit was entered, from which the plaintiff appealed.

*Schoch and Schoch,*
*By: Arch K. Schoch for plaintiff, appellant.*
*York, York & Hutchens,*
*By: C. A. York, Jr., for defendant, appellee.*

HIGGINS, J. "A physician or surgeon who undertakes to render professional service must meet these requirements: (1) He must possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess; (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; (3) he must use his best judgment in the treatment and care of his patient." *Hunt v. Bradshaw,* 242 N.C. 517, 88 S.E. 2d 762; *Jackson v. Sanitarium,* 234 N.C. 222, 67 S.E. 2d 57; *Wilson v. Hospital,* 232 N.C. 362, 61 S.E. 2d 102; *Smith v. McClung,* 201 N.C. 648, 161 S.E. 91; *Nash v. Royster,* 189 N.C. 408, 127 S.E. 356; *Long v. Austin,* 153 N.C. 508, 69 S.E. 500. "If the physician or surgeon lives up to the foregoing requirements, he is not civilly liable for the consequences.

If he fails in any particular and such failure is the proximate cause of injury and damage, he is liable." *Hunt v. Bradshaw, supra.*

The rules of liability applicable to physicians and surgeons apply likewise to dentists. *Grier v. Phillips,* 230 N.C. 672, 55 S.E. 2d 485; *McCracken v. Smathers,* 122 N.C. 799, 29 S.E. 354. The dentist is liable if injury proximately results either from a want of skill or from a want of its application. *Nash v. Royster, supra.* One who holds himself out to practice dentistry, by implication agrees to bring to his patient's case a fair, reasonable and competent degree of skill and to apply that skill with ordinary care and diligence in the exercise of his best judgment. The rule in relation to learning and skill does not require that extraordinary learning and skill which belong only to a gifted few of rare endowments, but such as is possessed by the average member of the profession in good standing. The rule of reasonable care and diligence does not require the exercise of the highest possible degree of care, and to render a physician or surgeon liable it is not enough that there has been a lesser degree of care than some other medical man might have shown, or less than even he, himself, might have bestowed. But there must be a want of ordinary and reasonable care leading to a bad result. This includes not only diagnosis, but treatment. *Nash v. Royster, supra.*

The plaintiff's medical evidence shows that good medical practice requires that broken roots should be removed at the time of the extraction. That infection in and around the broken roots should be permitted to continue for five months with two or three weekly operations which did nothing more than drain the infected area, would seem to be enough to permit the plaintiff to submit determinative issues to the jury. The evidence in the case of *Love v. Zimmerman,* 226 N.C. 389, 38 S.E. 2d 220, certainly is not stronger than the evidence in this case. We think the plaintiff was entitled to go to the jury, and to that end the judgment of nonsuit is

Reversed.

JOHNSON, J., not sitting