SARA COZART AND T. MAURICE COZART v. MARVIN E. CHAPIN, D.D.S.

No. 7810SC109

(Filed 6 February 1979)

1. **Physicians, Surgeons, and Allied Professions § 17.4— removal of impacted wisdom tooth—incision on wrong side of mouth—sufficiency of evidence of negligence**

     In an action to recover damages sustained by plaintiff when defendant allegedly negligently removed her impacted wisdom tooth, evidence was sufficient to be submitted to the jury where it tended to show that defendant possessed the degree of professional learning, skill and ability which others similarly situated ordinarily possessed; plaintiff was referred to defendant for diagnosis and removal of the tooth if necessary; defendant misread an x-ray and undertook to remove the tooth in question from the wrong side of plaintiff's mouth; and in so doing, defendant damaged nerves when he inserted a needle in plaintiff's gum and anesthetized the wrong side of her mouth.

2. **Evidence § 49— expert opinion—hypothetical question improper—sufficient facts in evidence to support opinion**

     In an action to recover damages for the allegedly negligent removal of an impacted wisdom tooth, defendant was not prejudiced by the admission of an opinion of an expert witness, though the technical requirements of hypothetical questions were not complied with, since the witness based his opinion on sufficient facts in evidence that any technical error was harmless to defendant.

3. **Trial § 39— court's remarks to jury—no coercion of verdict**

     The trial judge did not err in coercing the jury to reach a verdict or in failing to declare a mistrial *ex mero motu* where the jury requested further instructions on negligence which were given orally but not in writing; the jury requested that testimony of three witnesses be read back to them but the request was denied because it would consume so much time; the jury then asked three questions pertaining to the witnesses' testimony but the court refused to answer them because it would take the testimony out of context and cause a misinterpretation on the part of the jury; the court encouraged the jury to resolve their differences "without doing damage or injury to your own scruples"; and the judge was very careful and considerate of the jury during the course of the trial.

APPEAL by defendant from *Herring, Judge.* Judgment entered 26 August 1977 in Superior Court, WAKE County. Heard in the Court of Appeals 25 October 1978.

Plaintiffs instituted this action against defendant, Dr. Marvin E. Chapin, D.D.S., alleging that he was negligent in removing an impacted wisdom tooth of the plaintiff, Sara Cozart, and his alleged negligent dental treatment proximately caused paresthesia or

an altered sensation in her lower lip. Prior to trial, plaintiff's claims for damages based upon assault and battery as well as her claim for punitive damages were dismissed. T. Maurice Cozart's claim of lost consortium was also dismissed.

At trial, plaintiff presented evidence tending to show that in early 1975, she was examined by Dr. Hal P. Cockerham, who discovered an impacted wisdom tooth and referred her to defendant.

On 15 April 1975, plaintiff went to the office of defendant and was placed in defendant's chair. Defendant introduced  himself and picked up a needle and injected the left side of plaintiff's mouth without discussion of the risk involved with the extraction of an impacted wisdom tooth. When the needle went in, plaintiff felt a shock and jumped at the time of injection. After plaintiff thought the surgery was completed, she said, " 'Did you get the tooth' and he said, 'No,' he had read the x-ray backwards and that there was no tooth there.' " Defendant then anesthetized the right side of plaintiff's mouth and removed the impacted wisdom tooth.

Plaintiff states, "On the afternoon of the day of the surgery I felt very badly. I stayed in bed." Plaintiff experienced swelling on both sides of her face, her face looking as though she had mumps, with the left side being very swollen and the right side slightly swollen. The left side had a bruise extending down her throat which was blue and purple, and a week or so later, turned reddish or yellow. About two to four weeks after surgery, after the bruise and soreness went away, plaintiff was able to start eating, and she realized the tingling sensation was not going away in her lip.

Dr. Cockerham testified that he could not state with any degree of certainty whether he told plaintiff the location of the one remaining wisdom tooth. In his normal practice, he would have placed the x-rays in the view box, oriented the impacted wisdom tooth on the right side, and explained that the x-rays were placed in the view box so that the left side of the patient's x-ray would be sitting on the right side of the view box. It was the duty of a dentist to orient an x-ray properly with a patient's mouth if a dentist was going to use it. Dr. Cockerham forwarded an x-ray, plaintiff's Exhibit #2, to defendant. Dr. Cockerham also testified that excluding one additional filling since 15 April 1975,

there were three teeth on one side of plaintiff's mouth, which would be a way to orient the x-ray. Dr. Cockerham's records indicated that during an office visit of 7 October 1975, plaintiff reported residual numbness in the lower left portion of her lip, and he referred her to Dr. Coffey for consultation.

Dr. Coffey, an oral surgeon, testified that he conducted certain tests on the plaintiff, and based on his examination, he was of the opinion that plaintiff had a paresthesia of the left inferior alveolar nerve. In his opinion, the standard of care of an oral surgeon in the community with similar training and experience as of 15 April 1975 was that an oral surgeon would probably have informed the patient of possible nerve damage resulting from the removal of the wisdom tooth shown on plaintiff's Exhibit #2.

Further, in Dr. Coffey's opinion, an oral surgeon complying with the standard of care would orient the x-ray with the patient or the patient with the x-ray.

Dr. Gordon Burch, an expert in neurology, testified that he made two examinations of plaintiff in February 1976 and April or May 1977, and on the basis of his examination, he concluded that plaintiff was suffering from a sensory change consistent with abnormal function in the inferior alveolar nerve on the left side, in that, the nerve was conducting electrical impulses abnormally. Furthermore, Dr. Burch felt that in his opinion, it was highly unlikely that plaintiff's condition would change. Dr. Burch also testified, over objection, that it was his belief that the inferior alveolar nerve had been injured at the time of the local anesthetic undertaken on the left side.

Defendant testified that his appointment book for 11:00 a.m. on 15 April 1975 showed "Sara Cozart, horizontal number 17 . . . panorex sent, her telephone number and Dr. Cockerham." Defendant did not know the source of this information. Number 17 designated a lower left third molar. He said something to the effect, "[W]ell, you have only one left on the left," and plaintiff nodded to the statement. Defendant did not recall whether plaintiff jumped when he injected her on the left side. When defendant discovered no tooth on the left side, he sutured the incision and repeated the procedure on the right side.

Dr. Nicholas Georgiade testified that he examined plaintiff on 8 August 1977 and that in his opinion, plaintiff had a subjective

dysesthesia consistent with the branches of the nerves of the jawbone. He felt that the plaintiff's delayed perception of the altered sensation was incompatible with the existence of neuroma and that, in his opinion, the incision made by defendant on the left side of plaintiff's mouth could not have damaged the inferior alveolar nerve on that side.

Dr. John Angelillo corroborated the opinion of Dr. Georgiade to the effect that the delay in the onset of the dysesthesia is not compatible with nerve injury at the time of plaintiff's injection. Dr. Angelillo stated that the incision by defendant on the left side of plaintiff's mouth could not have damaged the inferior alveolar nerve since, in his opinion, nerve damage produces an immediate altered sensation.

After the jury had retired, it had difficulty in reaching a verdict, and at one point requested permission to rehear the testimony of Drs. Burch, Georgiade, and Angelillo. The jury formulated written questions and presented them to the trial judge who determined the questions could not be answered without a resulting misinterpretation by the jury. The jury reached a verdict in favor of plaintiff in the amount of $37,250.00. Defendant appeals.

*Crisp, Bolch, Smith & Davis, by Joyce L. Davis and Robert B. Schwentker, for plaintiff appellee.*

*Smith, Anderson, Blount & Mitchell, by James D. Blount, Jr., for defendant appellant.*

ERWIN, Judge.

Defendant contends that the trial court erred in denying his motion for a directed verdict at the close of all of the evidence on the grounds: (1) that plaintiff's evidence was insufficient to establish actionable negligence by defendant and (2) that plaintiff's evidence was insufficient to establish that defendant's failure to orient the x-ray with plaintiff's mouth was the proximate cause of plaintiff's injury.

Our Supreme Court held in *Hunt v. Bradshaw*, 242 N.C. 517, 521-22, 88 S.E. 2d 762, 765 (1955):

Cozart v. Chapin

"A physician or surgeon who undertakes to render professional services must meet these requirements: (1) He must possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess; (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; and (3) he must use his best judgment in the treatment and care of his patient. *Long v. Austin,* 153 N.C. 508, 69 S.E. 500; *Nash v. Royster,* 189 N.C. 408, 127 S.E. 356; *Smith v. McClung,* 201 N.C. 648, 161 S.E. 91; *Wilson v. Hospital,* 232 N.C. 362, 61 S.E. 2d 102; *Jackson v. Sanitarium,* 234 N.C. 222, 67 S.E. 2d 57. If the physician or surgeon lives up to the foregoing requirements he is not civilly liable for the consequences. If he fails in any one particular, and such failure is the proximate cause of injury and damage, he is liable."

The rules of liability applicable to physicians and surgeons apply likewise to dentists. *Hazelwood v. Adams,* 245 N.C. 398, 95 S.E. 2d 917 (1957); *Grier v. Phillips,* 230 N.C. 672, 55 S.E. 2d 485 (1949); *McCracken v. Smathers,* 122 N.C. 799, 29 S.E. 354 (1898).

On motion for judgment as of nonsuit, plaintiff's evidence is to be taken as true. *Anderson v. Carter,* 272 N.C. 426, 158 S.E. 2d 607 (1968); *Edwards v. Johnson,* 269 N.C. 30, 152 S.E. 2d 122 (1967); *Harris v. Wright,* 268 N.C. 654, 151 S.E. 2d 563 (1966). All the evidence must be considered in the light most favorable to plaintiff, giving him the benefit of every fact and inference of fact pertaining to the issues, which may be reasonably deducted from the evidence. *Price v. Tomrich Corp.,* 275 N.C. 385, 167 S.E. 2d 766 (1969); *Bowen v. Gardner,* 275 N.C. 363, 168 S.E. 2d 47 (1969). Defendant's evidence may be considered to the extent that it is not in conflict with plaintiff's evidence and tends to make clear or explain plaintiff's evidence. *Clarke v. Holman,* 274 N.C. 425, 163 S.E. 2d 783 (1968); *Blanton v. Frye,* 272 N.C. 231, 158 S.E. 2d 57 (1967); 12 Strong's N.C. Index 3d, Trial, § 21.1, pp. 399-400.

Plaintiff alleged defendant's negligence as follows:

"[H]e failed to exercise the degree of professional learning, skill and ability which others similarly situated possess; or to exercise the reasonable care and diligence in the application of his knowledge and skill to the plaintiff Sara Cozart's care;

or to use his best judgment in the treatment and care of his patient Sara Cozart at the time in question.

15. Defendant was also negligent in that he failed to make a proper and necessary examination to diagnose the condition of plaintiff's tooth and jaw before extracting said tooth.

16. Defendant was also negligent in that he failed to make a proper and necessary examination of the plaintiff's tooth, particularly by his own x-rays, before such extraction.

17. Defendant was also negligent in that he obviously mis-read the x-ray that he was given of plaintiff's mouth, if indeed he read it at all.

18. Defendant was negligent in that he carelessly and negligently injected the needle to anesthetize the lower left side of plaintiff Sara Cozart's mouth, and said injection injured the neurovascular bundle (the secondary or tertiary branch of the V3 distribution) in the area of the mandibular third left molar, when in fact the tooth to be extracted was located in the right side of her mouth and there was no reason for an injection to be made on the left side of the mouth; OR IN THE ALTERNATIVE, the defendant was negligent in that while patient Sara Cozart had the right to an informed election as to whether to undergo the proposed elective surgery, defendant did not inform her of the likelihood of the adverse results and defendant had knowledge of the risk involved and the plaintiff Sara Cozart was unaware of such risks.

19. In addition to the negligence of making an unnecessary injection, defendant was careless and negligent in that said injection, to anesthetize the lower left side of the plaintiff Sara Cozart's mouth, struck and injured the neurovascular bundle in the area of the mandibular on the lower left side of plaintiff Sara Cozart's mouth; OR IN THE ALTERNATIVE, the defendant was negligent in that while patient Sara Cozart had the right to an informed election as to whether to undergo the proposed elective surgery, defendant did not inform her of the likelihood of the adverse results and the plaintiff Sara Cozart was unaware of such risks.

20. Defendant was negligent in that he made an incision and conducted surgery on the side of plaintiff Sara Cozart's mouth with the intention of extracting a wisdom tooth on a side of the mouth where there was no wisdom tooth."

Plaintiff and defendant stipulated:

"In early January, 1975, Dr. Hal P. Cockerham referred plaintiff to defendant for diagnosis and, if necessary, removal of an impacted wisdom tooth."

Plaintiff testified:

"[T]hen Dr. Chapin came in the room shortly after and he introduced himself, and I introduced myself. He picked up the needle and put the injection into the left side. I had a shock that shocked me and I heard Dr. Chapin say that I've hit the pocket, or some such thing as that, and that's good. I just relaxed thinking no problem and sat back and Dr. Chapin left the room. Dr. Chapin left the room while the Novacaine was taking effect and his nurse and I had small talk.

. . . I was sitting in a chair. This was the type chair that had the two headpieces that your head sits back on. Over to my left was the nurse with the tools and behind me was the x-ray. Dr. Chapin looked behind me to look at that x-ray. I did not see the x-ray. Then he picked up the knife and I closed my eyes and he began to do his surgery. I thought the surgery was completed and I opened my eyes. I said, 'Did you get the tooth' and he said, 'No,' he had read the x-ray backwards and that there was no tooth there. He finished sewing and he immediately picked up another needle and put an injection in the right side, which I did not feel any type of shock or any reaction with. He then left the room and I heard him say in the hall it was the first time he had ever done that. . . . He did cut the tooth out, several pieces. I had not remembered it taking that long on having a wisdom tooth removed."

Plaintiff's medical evidence tended to show that defendant's standard of medical practice would require him to orient himself with plaintiff and the x-ray of her mouth, which was available to him at the time plaintiff was present in his office. All of the

evidence showed the impacted wisdom tooth was in the right lower gum of plaintiff rather than the left lower gum.

There is no question that the defendant possessed the degree of professional learning, skill, and ability which others similarly situated ordinarily possessed. The record clearly shows that plaintiff was referred to defendant by Dr. Cockerham "for diagnosis and, if necessary, removal of an impacted wisdom tooth." To us, this required defendant to examine the area of the impacted tooth and the x-ray to determine if the tooth should be removed.

[1] The evidence was sufficient to take this case to the jury on the issue of whether defendant exercised reasonable care and diligence in the application of his knowledge and skills to plaintiff's case and gave her such attention as he was required to give. *Dickens v. Everhart*, 284 N.C. 95, 199 S.E. 2d 440 (1973); *Belk v. Schweizer*, 268 N.C. 50, 149 S.E. 2d 565 (1966). Defendant's contention that he relied upon the information in his appointment book that number 17—the lower wisdom tooth was to be removed is in conflict with the requirements of the stipulated evidence, which he cannot escape.

To be actionable, it is not necessary that injury in the precise form in which it occurs should be foreseen from an act of negligence. It is only necessary that in the exercise of reasonable care, consequences of a generally injurious nature might be expected. *Slaughter v. Slaughter*, 264 N.C. 732, 142 S.E. 2d 683 (1965); *Childs v. Dowdy*, 14 N.C. App. 535, 188 S.E. 2d 638 (1972); 9 Strong's N.C. Index 3d, Negligence, § 9, pp. 364-65.

We conclude that plaintiff met her burden on the issue of proximate cause to submit the issue to the jury on the record before us. Defendant's motion for judgment as of nonsuit was properly overruled.

[2] On direct examination of Dr. Burch (witness for plaintiff), the record reveals:

"Q. How did you come to your conclusion that the condition you found in Sara could have been caused by a neuroma?

MR. BLOUNT: Objection.

NO RULING WAS MADE BY THE COURT, BUT THE WITNESS ANSWERED:

EXCEPTION NO. 21

A. I came to that conclusion because one, of the history that I had after surgical procedure and local anesthetic having been undertaken, and two, that the patient had a complaint consistent with injury to the inferior alveolar nerve and findings on my examination also consistent with injury to that nerve. In the effort of applying local anesthetic, it was clearly Dr. Chapin's intent to anesthetize the distribution of the inferior alveolar nerve and the needle was therefore introduced in the immediate vicinity.

MR. BLOUNT: Your Honor, I move to strike. He doesn't know what Dr. Chapin's intent was.

COURT: The objection is sustained and the motion to strike is allowed. The jury is instructed to disregard that testimony.

A. I had the history that the patient had received a local anesthetic for procedure in the left side. Knowing the course of the inferior alveolar nerve and knowing by the patient's report she had experienced a sudden shock-like sensation, to which indicated to me that the nerve had been injured at the time of the anesthetic, or at least touched by the needle if not frankly injured, and that it was therefore a reasonable conclusion that the patient's complaint and the findings that I had elicited on examination were related to injury to the inferior alveolar nerve, which had given rise to the formation of a neuroma.

MR. BLOUNT: Move to strike the answer.

COURT: Denied.

EXCEPTION NO. 22."

Defendant contends the trial court erred in allowing Dr. Burch's answer into the record over his motion to strike. We do not agree.

Defendant relies on the cases of *Summerlin v. R.R.*, 133 N.C. 550, 45 S.E. 898 (1903), and *Todd v. Watts*, 269 N.C. 417, 152 S.E. 2d 448 (1967), which held that the opinion of an expert must be based upon facts within the personal knowledge of the expert or

upon facts, supported by evidence, stated in a proper hypothetical question.

Plaintiff concedes that maybe the technical requirements of hypothetical questions were not complied with here. Dr. Burch based his opinion on sufficient facts in evidence that any technical error was harmless to defendant. Dr. Burch testified prior to the complained-of question:

"I have had occasion to meet Sara Cozart. She presented herself to my clinic for examination on February 13, 1976. The clinic was in the Medical Private Diagnostic Clinic of Duke University. She presented herself to me with a complaint which was neurological in nature. The complaint specifically was that of numbness over the lower left lip and left chin. She indicated to me that — in reviewing the history I was aware of all of the events that had transpired relative to her initial consultation with Dr. Cockerham and his referral of Mrs. Cozart to Dr. Chapin for oral surgery and the complaint that she dated to the time of that surgery. . . .

I took a medical history of Sara at that time. I obtained the history that Mrs. Cozart had presented herself to Dr. Cockerham for dental care and he determined she was suffering from an impacted tooth and had therefore referred her to Dr. Chapin. She had undergone consultation with Dr. Chapin in April of 1975. Mrs. Cozart related to me that she had undergone local anesthesia and surgical incision on the left side of her lower mouth and that this had in fact been undertaken mistakenly; that Dr. Chapin had sutured the incision area and explained to her that it had been a mistaken surgical approach, and subsequently undertook the extraction of the tooth in question on the right side and did so successfully. She indicated to me that at the time when the injection of anesthesia was administered on the left side she experienced a sudden shock-like sensation in the region of the chin on the left and that this passed quickly however. And at the time she noted nothing further in the region in question.

She stated that the extraction of the tooth on the right side had been rather difficult and painful, and that she was instructed by Dr. Chapin appropriately in the use of ice-packs

and Codeine for the relief of her pain. At approximately 9:00 p.m. on the day of the procedure she began to experience nausea and vomiting and contacted Dr. Chapin who advised her to discontinue the Codeine, believing it was the offending agent causing the nausea and vomiting. She related to me that she had a considerable amount of swelling and bruising in the jaw on both sides following the procedures, and indeed that it was her observation that the swelling and pain following the procedures was actually somewhat worse on the left side where no tooth had been retrieved, where certainly she was experiencing a great deal of discomfort on the surgical side as well.

                    *     *     *

I had at my disposal a report from Dr. Coffey and also some brief notes from Dr. Chapin."

The report of Dr. Coffey, plaintiff's Exhibit No. 3, was admitted into evidence at the trial and reads as follows:

"Dear Dr. Cockerham:

Thank you for referring Mrs. Cozart to us for treatment. As I notified you by phone she was seen in our office on October 14th by Dr. Bell and me for evaluation and x-ray examination of paresthesia of the left lower lip.

Our findings revealed a normal response to pain stimulus in both the right and left lower lips, however, a paresthesia was present in the left lower lip which gave an altered response to touch stimulus. The sensation in the gingiva on both the right and left sides was essentially the same, however, the teeth on the lower left side gave no response when tested with ice where as the ones on the right side gave approximately a five second response. X-ray examination of #17 area did not show evidence of bony surgery in the area immediately adjacent to the neuro vascular bundle and we could find no evidence of disruption of the cortical bone surrounding the neuro vascular bundle in #17 area. It was our impression that the nerve involvement on the lower left side was possibly secondary to contact between the needle and the neuro vascular bundle at the time of injection on that side since the patient stated that she did experience what

she described as a shock in her lower left lip and teeth at the time of injection. Injury, nevertheless, to the nerve by the actual surgery cannot definitely be ruled out as a causative factor in the current findings.

I have told her that the condition would probably improve over the next two months but in all probability at the end of twelve months healing would be essentially complete. I advised her that in my past experience when paresthesia did occur that the return in sensation to the lip on the affected side was never the same feeling on the other side. Mrs. Cozart was very pleasant throughout the consultation and I would not expect any future problems to arise with this case.

If I can be of any further help, please feel free to give me a call. We told Mrs. Cozart that if she would like to see us again in the future for further consultation that we would be glad to help her.

Sincerely,

DRS. BELL, MARTIN AND COFFEY, P.A.

/s/

R. DONALD COFFEY, JR., D.D.S."

Our Supreme Court stated in *Penland v. Coal Co.*, 246 N.C. 26, 31, 97 S.E. 2d 432, 436 (1957):

"As to this contention, the rule is that ordinarily the opinion of a physician is not rendered inadmissible by the fact that it is based wholly or in part on statements made to him by the patient, if those statements are made, as in the instant case, in the course of professional treatment and with a view of effecting a cure, or during an examination made for the purpose of treatment and cure. 'In such cases statements of an injured or diseased person, while not admissible as evidence of the facts stated, may be testified to by the physician to show the basis of his opinion.'" (Citations omitted.)

In *State v. DeGregory*, 285 N.C. 122, 134, 203 S.E. 2d 794, 802 (1974), Justice Huskins reviewed the problem of opinions by expert witnesses and concluded:

"On these authorities, and on reason as well, we hold it was proper for Dr. Rollins to base his expert opinion as to the sanity of Karl DeGregory upon both his own personal examination and other information contained in the patient's official hospital record. The question was proper and the answer was competent."

With the wealth of information available to Dr. Burch as revealed by the record before us, we conclude that the trial court's ruling on the evidence in question was proper, and this assignment of error is overruled.

Defendant argues that the trial court erred in allowing Dr. Coffey to testify about the risk involved in extracting plaintiff's impacted wisdom tooth on the lower right side of her mouth, since this did not relate to the issues raised by plaintiff's claim which involved negligence on the basis of the injection and operation on the left side of plaintiff's mouth. At the close of all of the evidence, the trial court ruled:

"However, I wish to make it clear that I do not see the application of informed consent, or any theory with respect to informed consent to the evidence. And I intend to submit the issue to the jury with respect to alleged negligence, as the same would deal with the use of x-rays and then going in on the left side and instead of the right side."

In view of the court's ruling, we find no merit in this contention of defendant.

[3] In his last assignment of error, defendant contends that the trial judge erred in coercing the jury to reach a verdict and failing to declare a mistrial *ex mero motu*. Defendant did not move for a mistrial nor did defendant object to any of the conduct of the court he now complains of.

The jury started its deliberations at 4:55 p.m. on Thursday and did not reach an agreement. On Friday morning, the jury requested the court to define negligence and how the law applies in this case. This was done by the court, after which, the jury requested such instruction in writing. This request was denied. The jury resumed deliberations. At 2:00 p.m., the court instructed the jury as follows:

"Well, thank you, sir. I would say to the jury then, that I know that there are occasions where reasonable men and women simply cannot agree. At this point, however, the law requires me to instruct you that it is your duty, if you can do so, to resolve any differences between yourselves as reasonable men and women, *and without doing damage or injury to your own scruples*, to reach a verdict in this matter, if it is possible for you to do so.

(It will be very expensive for both parties in this matter to retry this case. If you are not able to reach a verdict in the matter, then I will have no choice but to declare a mistrial and to order a retrial of the matter before another jury at another session of court. The matter is important to both the plaintiff and the defendant, and as I said, the retrial will be an expensive matter. So, I'm going to ask you please to go back to the jury room again and reconsider the matter, consider it further and see if you can reach a verdict in the matter. You have been out for some period of time now that is approaching one complete day, but I would like for you to consider the matter further, if you will. If you have not reached a verdict by five o'clock this afternoon, when we would normally recess for the day, I intend to bring you back at that point and we'll decide where to go from there, but you may retire now and resume your deliberations.)

EXCEPTION NO. 30" [Emphasis added.]

The jury returned to its room for the remainder of the day.

As court convened on Friday morning, the jury requested testimony of Drs. Burch, Georgiade, and Angelillo. The court advised the jury as follows:

"(Ladies and gentlemen of the jury and Mr. Foreman, I conferred yesterday afternoon with the court reporter who took a portion of the testimony that you've asked be read back, and my conclusion is that it is totally impractical, because of the length of the testimony and what she would have to do with her notes in order to read that back to you, and it would probably take some considerable period of time more to read it back than the actual time expended in receiving the testimony; therefore, I must deny the request that testimony be read back.

It is still your duty, of course, under the law, to remember and consider what the testimony was; and while I recognize the impractical aspect of that and the unrealistic aspect of that, it's your duty as jurors to confer together and, as best you can, determine what the testimony was. You have the final say in the matter as to what the findings of fact are in the case, in any event.

Is it possible that you might narrow the matter down to a specific question or questions? If you can, I will confer with counsel and see if, from notes available, we might possibly reach an agreement as to what the testimony was with respect to a particular subject. Would you like to confer among yourselves further on that point?)

EXCEPTION NO. 33

. . .

COURT: Very well. I'll ask the bailiff to again hand you the issue, if he has not done so already, and you may retire to the jury room to confer again. If you feel that you are able to reduce the matter to any questions, I'll be happy to take up the questions with counsel and see if any kind of answer can be provided, if they will consent to do so, in any event. Thank you very much.

. . .

COURT: Addressing myself now, in the absence of the jury, to counsel for both the plaintiff and the defendant, I have done, I think, what was suggested and agreed to yesterday in Chambers, and we shall see if there is a question of any kind that might help resolve this matter."

At 10:00 a.m., the jury returned with three written questions for the court:

"(The questions are, first: With respect to the testimony of Dr. Burch, he gave possible causes for this particular nerve damage. What were they? Dr. *Georgeola* [sic], did he give possible causes; if so, what? After his examination, he eliminated some of these causes. What were they? Dr. Angelillo, the results of his examination showed through x-rays that some of the possible causes could not be found. What were they?

All right. As I told you, I will confer with counsel in chambers to see if we can come up with anything, and we will reconvene as soon as that is done. In any event, let us recess for twenty minutes at this point so that we might confer on the matter. Court is recessed for twenty minutes.)

EXCEPTION NO. 34

. . .

COURT: (Mr. Foreman and ladies and gentlemen of the jury, I have conferred with counsel both for the plaintiff and defendant, and a great effort has been made to answer the questions that have been put; however, we have all three concluded that we are unable to come up with an accurate answer and all feel that to answer the questions—if we were able to—from our notes would take that part of it out of context and thus cause a misinterpretation on your part, so I am sorry. We are simply unable to answer the questions as they have been stated. So I'm going to have to ask you to again retire and do the best you can and exercise your best ability to recall what was said by the witnesses who have testified.)

EXCEPTION NO. 35"

After lunch at 2:25 p.m., the jury returned its verdict in open court, was polled at the request of defendant, and the jury assented to its verdict.

Defendant contends the cumulative effect of the course of the trial as set out was highly improper and coercive; therefore, defendant should have a new trial. Defendant relies on *Pirch v. Firestone Tire & Rubber Co.*, 80 N.M. 323, 455 P. 2d 189, 38 A.L.R. 3d 1273 (1969), which held that: (1) the trial court erred by imposing a time limit upon the deliberations of a jury tending to coerce jurors into agreeing upon a verdict contrary to their individual convictions, in order that a verdict may be reached within the time limit; and (2) the cumulative effect of actions taken by the trial judge as to a deadlocked jury in a products liability case, such actions, including remarks relating to the length of time the case has taken, the expense involved, and the importance of the case, and the imposing of a time limit for further deliberations, was coercive and tended to force agreement, and thus constituted reversible error.

The plaintiff states:

"Similar instructions have been upheld in many cases in-
cluding STATE v WILLIAMS, 288 N.C. 680, 220 S.E. 2d 558
(1975); STATE v BAILEY, 280 N.C. 264, 185 S.E. 2d 683 (1971)
[sic] [, cert. denied, 409 U.S. 948, 34 L.Ed. 2d 218, 93 S.Ct. 293
(1972)]; STATE v MCVAY and STATE v SIMMONS, 279 N.C. 428,
183 S.E. 2d 652 (1971); KANOY v HINSHAW, 273 N.C. 418, 160
S.E. 2d 296 (1968); IN RE WILL OF HALL, 252 N.C. 70, 113 S.E.
2d 1 (1960); and STATE v BRODIE, 190 N.C. 554, 130 S.E. 205
(1925)."

We agree with plaintiff that similar instructions to the jury
as given here have been approved by our Supreme Court. We
note the trial judge was very careful and considerate of the jury
during the course of the trial. We do not feel that the trial court
in any way coerced a verdict or that the jury was intimidated by
his actions or words.

We find no merit in defendant's final assignment of error.

In the trial below, we find

No error.

Chief Judge MORRIS and Judge ARNOLD concur.