BENJAMIN HART, ADMINISTRATOR OF THE ESTATE OF ROBERT EARL BATTLE, DECEASED v. J. M. WARREN, M.D.

No. 797SC1037

(Filed 20 May 1980)

1. **Appeal and Error § 14— directed verdict—withdrawal of notice of appeal—motion for new trial—appeal of directed verdict and denial of new trial**

    Where plaintiff gave notice of appeal on 11 December 1978 when a directed verdict was entered for defendant, plaintiff moved for a new trial on 19 December, plaintiff moved to withdraw his appeal on 22 December, plaintiff filed a renewed motion for a new trial on 26 December, and this motion was denied on 29 March 1979, plaintiff's notice of appeal on 6 April from judgment on the directed verdict and from the order denying plaintiff's motion for a new trial brought the case before the Court of Appeals in a proper and timely fashion.

2. **Physicians, Surgeons and Allied Professions § 17.2— negligence of doctor in treatment of patient—sufficiency of evidence**

    Plaintiff's evidence was sufficient for the jury on the issue of whether negligence by defendant physician was a proximate cause of the death of plaintiff's intestate where there was evidence tending to show that defendant, a general practitioner, undertook to treat the intestate when he came to a hospital emergency room; defendant's examination of the intestate lasted only four minutes; a medical expert testified that the patient's history revealed a textbook case of possible pancreatitis; a serum amylase test would have revealed pancreatitis, but no such test was ordered by defendant; defendant diagnosed intestate's condition as alcoholic gastritis and gave intestate a strong pain reliever which masked his symptoms; the intestate should have been put in the hospital but was allowed to go home; the intestate died of a combination of pancreatitis and a perforated ulcer; and a medical expert testified that he had an opinion based on a reasonable medical certainty that defendant's negligence was a cause of the intestate's death.

APPEAL by plaintiff from *Brown, Judge*. Judgment entered 12 December 1978 in Superior Court, EDGECOMBE County. Heard in the Court of Appeals 23 April 1980.

This is an action by the administrator of the estate of Robert Earl Battle against J. M. Warren, M.D., for damages allegedly resulting from the wrongful death of plaintiff's intestate, which plaintiff alleges was proximately caused by the negligence of the defendant.

On 11 December 1978 defendant moved for a directed verdict under Rule 50 of the Rules of Civil Procedure. The motion was

allowed on the same day, and plaintiff gave notice of appeal. On 19 December 1978 plaintiff moved for a new trial. Thereafter, on 22 December 1978 plaintiff moved to abandon and withdraw his notice of appeal. Then, on 26 December 1978, plaintiff filed a renewed motion for a new trial pursuant to Rule 59, which motion was denied by the Court on 29 March 1979. Plaintiff thereupon gave notice of appeal from the judgment on the directed verdict entered 12 December 1978 and from the order dated 29 March 1979 denying plaintiff's motion for a new trial. The trial judge entered an order dated 10 April 1979 adjudging that plaintiff had given due notice of appeal.

*Watson, King & Hofler, by R. Hayes Hofler III, for plaintiff appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by James D. Blount, Jr., and Nigle B. Barrow, Jr., for defendant appellee.*

HILL, Judge.

[1] Appellee contends plaintiff appellant has abandoned in his brief the one properly preserved exception and assignment of error, and, therefore, failed to present any question to this Court; that by abandoning his first appeal and seeking a new trial the appellant was precluded from appealing from rulings made previously by the trial court. *See Sink v. Easter*, 288 N.C. 183, 217 S.E. 2d 532 (1975). We do not agree. Once the notice of appeal was given, jurisdiction was transferred from the superior court to the Court of Appeals. In order to properly proceed with plaintiff's motion for a new trial, jurisdiction had to be re-established in the superior court. This was done on 22 December 1978 by plaintiff's motion for withdrawal of notice of appeal. This simply restored jurisdiction in the trial court, and notice of appeal on 6 April 1979 from judgment on the directed verdict and from the order denying plaintiff's motion for a new trial brought the case before this Court in a proper and timely fashion.

[2] Appellant contends the trial court erred in directing the verdict in favor of the defendant at the end of the plaintiff's evidence. A careful reading of the record leads us to the same conclusion. We must set forth rather extensive facts for proper disposition of the case.

Robert Earl Battle left work on 14 October 1974, complaining of abdominal pain and during the evening was driven to the emergency room of Nash General Hospital. At the hospital a nurse took a preliminary medical history, and the defendant doctor examined Battle for some four or five minutes. Defendant doctor is a general practitioner and was covering the emergency room that night. Battle indicated he had been drinking a pint of alcohol each day for the past ten or twelve days, complained of intermittent stomachache, nausea and vomiting. His temperature, respiration rate, blood pressure, blood work and pulse rate were within normal limits. The abdomen was soft and flat and bowel sounds hyperactive.

Dr. Warren gave decedent a moderately strong pain reliever, diagnosed the condition as alcoholic gastritis, and allowed Battle to go home after prescribing a mild relaxant and anti-pain drug. Battle became progressively worse and was carried to another doctor's office the following afternoon. Battle died two days after the examination by defendant.

The patient was seen by Dr. James E. Bryant in Rocky Mount on the afternoon of 15 October 1974. Dr. Bryant is engaged in family practice and a general practice. Dr. Bryant testified that his diagnosis was pancreatitis, which diagnosis was later confirmed. Dr. Bryant further testified that he was familiar with the standard of care at Nash General Hospital for a family practitioner covering the emergency room. After being presented with a long hypothetical question containing facts to be found by the jury, Dr. Bryant testified on cross-examination that the examination and treatment of Battle by Dr. Warren were in accordance with an acceptable standard of care. On redirect examination, Dr. Bryant testified after listening to another hypothetical question outlining the facts of this case that he would have considered pancreatitis as a possible diagnosis and that a serum amylase test would have helped in the diagnosis of the patient's problems. He mentioned other factual situations where he would not have made such a diagnosis.

Dr. Herbert J. Proctor testified that he was licensed to practice medicine in North Carolina in 1969; that he did his residency and internship at North Carolina Memorial Hospital in Chapel Hill, was board qualified in general and thoracic surgery and thus

was an "expert" in these areas. He listed his educational background, teaching and writing experience, and hospital experience. Dr. Proctor further testified that he averaged nine or ten hours a day in the emergency room seeing patients. Dr. Proctor is familiar with standards and practices in communities such as Rocky Mount and hospitals such as Nash General Hospital, having been clinical director for Emergency Medical Services of North Carolina. Proctor stated that he had been in Nash General Hospital; that he is familiar with the standards and practices in communities of that size and in hospitals of that size; and that pancreatitis crosses over into his area of expertise. Dr. Proctor qualified as an expert and testified that the patient died of a combination of pancreatitis and a perforated ulcer. Based on a hypothetical question covering the facts of the case, Dr. Proctor further testified that from a medical point of view, the course of diagnosis and treatment pursued by the defendant, Dr. Warren, is not the course that would have been pursued by a reasonably skillful emergency room physician in a hospital the size of Nash General. Dr. Proctor took issue with the examination of the patient taking only four minutes and the giving of a substantial anti-pain drug which masked the symptoms. The doctor testified that the patient's history revealed a textbook case of the possibility of pancreatitis, and a serum amylase should have been drawn; that in his opinion a serum amylase test would have revealed pancreatitis; that it is unlikely that pancreatitis would have developed over a short period of time; and that Battle should have been admitted to the hospital.

Dr. Proctor further testified that based on the hypothetical question given to him previously, he had an opinion based on a reasonable medical certainty that the defendant Warren's negligence was a cause of Battle's death.

The defendant moved for a directed verdict pursuant to Rule 50, contending there was insufficient evidence before the Court of a failure by defendant to exercise reasonable care in the treatment of the patient, based on the standard acceptable for a general practitioner in the same or similar community. The court adjourned without ruling on the motion and asked the defendant to restate his motion the following day. At that time, the defendant moved for a directed verdict based on Rule 50, contending that the plaintiffs had not proved negligence; had not proved

negligence was the proximate cause of death; and had not proved negligence sufficient to go to the jury. The motion was allowed.

It is elementary that in determining the sufficiency of evidence to withstand a Rule 50 motion, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in its favor. *Rappaport v. Days Inn*, 296 N.C. 382, 250 S.E. 2d 245 (1979).

Justice Parker has stated, that in ruling on a motion for nonsuit,

> ... after all the evidence of plaintiff and defendant is in, the court may consider so much of defendant's evidence as is favorable to plaintiff or tends to clarify or explain evidence offered by plaintiff not inconsistent therewith, but it must ignore that which tends to establish another and different state of facts or which tends to contradict or impeach the testimony presented by plaintiff. Otherwise, consideration would not be in the light most favorable to the plaintiff.

*Morgan v. Tea Co.*, 266 N.C. 221, 222-223, 145 S.E. 2d 877 (1966).

The courts of the State have repeatedly held that,

> A physician or surgeon who undertakes to render professional services must meet these requirements:
>
> (1) he must possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess;
>
> (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's care; and
>
> (3) he must use his best judgment in the treatment and care of his patient. (Citations omitted.)
>
> If a physician or surgeon lives up to the foregoing requirements he is not civilly liable for the consequences. If he fails in any one particular, and such failure is the proximate cause of injury and damage, he is liable.

*Hunt v. Bradshaw*, 242 N.C. 517, 521-2, 88 S.E. 2d 762 (1955); *Cozart v. Chapin*, 39 N.C. App. 503, 251 S.E. 2d 682, *disc. rev. denied* 297 N.C. 299 (1979).

In *Belk v. Schweizer*, 268 N.C. 50, 56, 149 S.E. 2d 565 (1966), in an opinion by then Chief Justice Parker, we find the following:

> A qualified physician or surgeon does not guarantee or insure the correctness of his diagnosis, and ordinarily he is not responsible for a mistake in diagnosis if he uses the requisite degree of skill and care. Generally stated, a qualified physician or surgeon is not liable for an honest error or mistake in judgment if he applies ordinary and reasonable skill and care, keeps within recognized and approved methods, and forms his judgment after a careful and proper examination or investigation. He is not charged with the duty of omniscience, and ordinarily is not an insurer. In order to afford a basis for malpractice, the want of skill or care must be a proximate cause of the injury or death of the patient. 70 CJS, Physicians and Surgeons, p. 48, a, c, d, e.

We are aware that the legislature at its 1975 session (second session, c. 977, s. 4) established a statutory Standard of Health Care, but this cause of action arose prior thereto. *See* G.S. 90-21.12.

Defendant contends the plaintiff has failed to show any breach of an acceptable standard of care. We do not agree. Admittedly, there is conflict in the testimony offered by plaintiff's witnesses. Nevertheless, when we look at the testimony offered by Dr. Proctor in the light most favorable to the plaintiff as is required, we must conclude there was sufficient evidence to go to the jury on the issue of whether the plaintiff has shown any breach of an acceptable standard of care.

Defendant contends plaintiff fails to show that any possible breach of an acceptable standard of care by the defendant was the proximate cause of the death of plaintiff's intestate. Again, we must turn to the testimony of Dr. Proctor.

> Q. Based upon the same facts set forth in the hypothetical question above, do you have an opinion, doctor, based upon reasonable medical certainty, as to whether or not the defendant's negligence was a cause of Robert Earl Battle's death?

OBJECTION OVERRULED.

A. I do.

MOTION TO STRIKE ANSWER. DENIED.

Q. What is your opinion, doctor?

OBJECTION OVERRULED.

A. My opinion is it contributed to his death.

MOTION TO STRIKE DENIED.

Q. Was it a cause of his death?

OBJECTION—leading.

THE COURT: Try not to lead the witness.

A. It was.

Q. I will rephrase the question. State whether or not it was a cause of his death?

OBJECTION OVERRULED.

A. I think it was a cause.

MOTION TO STRIKE ANSWER. DENIED.

Defendant contends the foregoing testimony is incompetent. That question is not directly raised at this time. Furthermore, the court must consider even "incompetent" evidence in ruling on a motion for a directed verdict. *Koury v. Follo*, 272 N.C. 366, 372, 158 S.E. 2d 548 (1968).

In order for the plaintiff to make out a prima facie case, it was necessary that plaintiff not only show negligence on the part of the defendant, but that such negligence was the proximate cause of the injury sustained by plaintiff's intestate—that the negligence shown had a causal relationship to the injury complained of. If the evidence failed to show a causal connection between the alleged negligence and the injury complained of, motion for directed verdict in favor of the defendant was proper. *Weatherman v. White*, 10 N.C. App. 480, 484, 179 S.E. 2d 134 (1971).

Defendant contends plaintiff has failed to show that any act of the defendant was the real or direct cause of death. Dr. Proctor

testified that in his opinion the defendant's negligence was a cause of the death of Robert Earl Battle. This is sufficient to overcome defendant's motion.

Next, defendant argues that physician's negligence must be an affirmative act, and that a *failure to diagnose* is not active negligence. We note that the defendant did diagnose; he did perform affirmative acts. Defendant simply made a hurried examination which did not include necessary tests to arrive at a *proper* diagnosis in accordance with the acceptable standard of care for communities similar to Nash County.

> The law is, of course, well settled that a physician is liable for a wrong diagnosis of a case, resulting from a want of reasonable skill or care on the part of the physician and followed by improper treatment, to the injury of the patient.

*Brewer v. Ring and Valk*, 177 N.C. 476, 489, 99 S.E. 358 (1919).

In conclusion, not only is there evidence of a cursory examination of the patient, but the treatment consisted of a masking of the symptoms of the real illness through an injection for pain and a failure to admit Battle to the hospital where X-rays would have been routinely done and would have aided in providing a proper diagnosis.

Defendant cites *Byrd v. Express Co.*, 139 N.C. 273, 51 S.E. 851 (1905), in which an employee of the defendant failed to load serum onto a train. The serum was needed in the treatment of plaintiff's son, who later died. The attending physician, when asked whether, if the medicine had been received in time and taken according to his directions, would probably have effected a cure or saved his patient's life, answered that the prognosis in all aggravated cases of typhoid fever is very grave. The doctor expressed the belief that had there been no interruption in the course of treatment, ". . . that the chances of recovery would have been better . . ." and that was as far as he would go. *Byrd, supra*, at p. 277. In sustaining the motion for nonsuit, Justice Walker, speaking for the Supreme Court, said: "[T]his falls very short of tending to prove that the failure to receive the medicine caused the [patient's] death." *Id*. We find that case distinguishable from the case *sub judice* where Dr. Proctor unequivocally testified

that defendant's negligence in failing to diagnose was a cause of death.

Plaintiff cites as error the procedure by which the court heard arguments on defendant's motion for directed verdict. Motion was made to dismiss under Rule 50 at the end of plaintiff's case on one day. The court recessed until the following day at which time the court asked the defendant to repeat his motion. Defendant did, and made further and different arguments. The repetition of the motion and arguments made in conjunction therewith are a continuation of the motion and argument made the previous day. The burden is on the plaintiff to show not just some technical error but rather a prejudicial error which amounts to the denial of a substantial right. *Gregory v. Lynch*, 271 N.C. 198, 203, 155 S.E. 2d 488 (1967). We find no error.

Based on the evidence of record and the rules of law set out herein, the plaintiff is entitled to a

New trial.

Judges MARTIN (Robert M.) and WEBB concur.